QUINTILLA M. DRESHER, APPELLEE, V. ANSON E. BECKER ET AL., APPELLANTS.

FILED FEBRUARY 28, 1911.   No. 16,302.

1. **Fraud:** MISREPRESENTATIONS OF VENDOR. As a general rule, a mere misrepresentation of value, when made by the owner of land in an effort to sell it, is not actionable, but a vendor may be held liable in damages for misrepresenting the value of his realty to a nonresident vendee who relies on the misrepresentations in ignorance of such value and is prevented by the fraud of vendor from inspecting the property.

2. ———: ———: MEASURES OF DAMAGES. Ordinarily in an action to recover from vendor damages for conveying realty different from that shown to vendee, the measure of recovery is the difference in value between the property conveyed and the property shown, but where a nonresident vendee purchases realty without knowledge of its location and value, relying on vendor's misrepresentations in relation thereto, he may recover the difference between the value of the property and what it was represented to be, if he was prevented by the fraud of vendor from inspecting it.

3. **New Trial:** NEWLY DISCOVERED EVIDENCE: DILIGENCE. An applicant for a new trial on the ground of newly discovered evidence must show that he could not by the exercise of reasonable diligence have discovered and produced such evidence at the trial,

4. **Principal and Agent:** FRAUD: JOINT LIABILITY. Where principal and agent jointly participate in, and share the fruits of, actionable fraud, they are jointly liable for resulting damages.

5. ———: ———: LIABILITY OF PRINCIPAL. A principal who retains benefits derived from the fraudulent conduct of his agent is chargeable with the instrumentalities employed by the latter in carrying out the fraudulent purpose.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*McGilton, Gaines & Smith,* for appellants.

*D. M. Vinsonhaler, contra.*

ROSE, J.

This is an action to recover damages in the sum of $6,040.86 for fraudulent representations whereby plaintiff was induced to exchange a quarter section of land in Merrick county for a house and lot in Omaha. From a judgment in favor of plaintiff for $3,232.16, defendants have appealed.

In her petition, plaintiff, among other things, pleaded, in substance, the following facts: Defendant Thomas Brennan represented to plaintiff that he was the agent of the owner of the Omaha property, and proposed the exchange. Defendant Anson E. Becker, an employee of Brennan, was the real owner, a fact not known to plaintiff until after the deal had been closed. To deceive plaintiff and induce her to make the exchange, defendants falsely and fraudulently represented to her that the Omaha property was situated in the most desirable residence portion of the city; that it was in good repair; that it was occupied by tenants who had leased it for the year 1908 at an annual rental of $810; and that it was reasonably worth $10,000. While the negotiations were in progress, plaintiff was a resident of Portland, Oregon, and was not familiar with Omaha, or with the value of property therein, but had previously transacted business with

Brennan, and had confidence in him. Brennan, at his office in Omaha, December 16, 1907, called Becker and said to him in the presence of plaintiff: "This is Miss Dresher from Portland, who is here to see about her farm." Thereupon Becker procured a conveyance and took plaintiff to a locality different from that described in the negotiations, showed her a piece of real estate different from that subsequently exchanged for her farm, and told her it was the property defendants offered to trade therefor. Plaintiff left Omaha the same day. At the solicitation of defendants she returned December 31, 1907, deeded her farm to Becker in exchange for a property different from that shown by him, relying upon the representations of defendants as to value, location, condition and rental. The answers admit the exchange of the properties and that Becker was in the employ of Brennan, but deny all allegations charging defendants with fraud or deceit, and allege that plaintiff knew the value of the Omaha property and that the title thereto stood in the name of Becker who was joint owner with W. V. Bennett; that the property shown to plaintiff was in fact the property exchanged for her farm, and that it was worth $10,000, though representations to that effect were mere expressions of opinion.

The court instructed the jury their verdict should be for the defendants if they found from the evidence that Becker showed plaintiff the property subsequently conveyed to her. Failure of the trial court to direct a verdict for defendants is assigned as error, and it is argued that the evidence is insufficient to sustain a finding that Becker did not show plaintiff the property described in his deed to her; that plaintiff was not deceived; that the representations as to value were mere expressions of opinion for which defendants are not liable, and that there is no competent proof that plaintiff was damaged, even if she did not see the Omaha property before the exchange was made. Plaintiff testified that Becker did not take her to the property in controversy, and she gave

details indicating that he took her to a different location and showed her another house. The trial developed incidents which suggest that she may have been mistaken, but her testimony was direct and positive, and she stead- fastly adhered to her story through a trying cross-examination. She was directly contradicted by Becker, and under such circumstances the credibility of the witnesses and the weight of the evidence were questions for the jury. On this issue they found for the plaintiff. The finding is supported by sufficient evidence, and for the purpose of this appeal it establishes the fact that the property shown was not the property conveyed.

Is there competent proof of damages? The evidence shows that when plaintiff was residing in Portland in November, 1907, she received from Brennan letters written by Becker which contained such representations as the following: "I have a client who owns a pair of flats well located, which bring in a rental of $67.50 per month, or $810 annually. There is a mortgage against them as follows: $500 September 1, 1908; $500 September 1, 1909; $500 September 1, 1910; $2,250 September 1, 1911. * * * This property is always rented." "The price is $10,000." "The property is always occupied by good tenants." "You can always be assured of the above income from the property. You will notice that this income is sufficient to pay the instalments on the principal, as well as the interest and taxes, and it would not be long before you had the entire property free from incumbrance." At that time Becker occupied one of the flats. Four months earlier Brennan advertised the property for sale at $6,500. Plaintiff testified that in a conversation with Becker he represented the property to be worth $10,000, and said it was rented for the coming year. She further testified: "Well, Mr. Becker said that that property, renting for $810 a year, was more than I could get off of my farm, and that $810 a year would take care of the interest and the payments, and in a few years the property would be paid for. As to the value of the house I knew nothing,

because I knew nothing about Omaha property, so far as
valuation is concerned. I relied on his word." The proof
also shows that the house was vacated shortly after it
changed hands, and remained empty for some time.
Finally a tenant was procured for one of the flats at a
rental of $20 a month. The evidence would justify a
finding that the property was worth $6,500 at the time of
the sale, and it was mortgaged for $3,750.

It is true, as a general rule, that a mere misrepresen-
tation of value, when made by the owner of land in an
effort to sell it, is not actionable, but "the rule is other-
wise where the purchaser resides a considerable distance
from the location of the land, is ignorant of its value,
and is prevented from examining the property or from
making inquiries as to its condition and value by trick or
fraud of the vendor." *McKnight v. Thompson*, 39 Neb.
752. Under the circumstances of the present case, mis-
representations as to location, value, and contracts with
tenants, as well as conduct preventing the purchaser from
inspecting the property, are actionable. *Stochl v. Caley*,
48 Neb. 786; *Hoock v. Bowman*, 42 Neb. 80. In such a
view of the law, defendants argue, however, that the meas-
ure of damages is the difference in value between the
property conveyed and the property shown, and they in-
sist that plaintiff cannot recover any sum under the evi-
dence because there is no proof of the value of the real
estate described in her testimony as the property shown
her by Becker. The rule invoked by defendants is gen-
erally applied where vendee relies on the value of the
land shown and sues vendor to recover damages for con-
veying other property. *Odell v. Story*, 81 Neb. 437; *Hoock
v. Bowman*, 42 Neb. 80. The present case is not controlled
by the rule stated for the following reasons: Plaintiff did
not live in Omaha. She did not know the value of the real
estate. In exchanging property she did not rely on the
value of the property shown nor make proof thereof. By
fraud she was prevented from inspecting the property con-
veyed to her, and her testimony shows that she relied on

the representations of defendants as to value, location, rental and leases. Her evidence as to the measure of damages conforms to the following principle: "Where real estate is purchased on the personal representations of the seller, and such representations are false as to the location of the property, the measure of damages is the difference in value between the property as represented, and as it actually is." *Woolman v. Wirtsbaugh,* 22 Neb. 490. An instruction on the measure of damages is also criticised, but it is in harmony with the rule stated.

A reversal is next asked because the trial court refused to grant a new trial on the ground of newly discovered evidence. The ruling was justified under the doctrine that an applicant for a new trial, on the ground of newly discovered evidence, must show that he could not by the exercise of reasonable diligence have discovered and produced such evidence at the trial. *Matoushek v. Dutcher & Sons,* 67 Neb. 627; *Andrews v. Hastings,* 85 Neb. 548.

Another ground of complaint is that the verdict is excessive. Under the rule already stated, defendants were liable for the difference between the value of the Omaha property when it was exchanged and what it was represented to be. Four months before representing the value to be $10,000 defendants advertised it for sale at $6,500, and the evidence will justify a finding that the value was the same when it was conveyed to plaintiff. In this view of the evidence, the judgment for $3,232.16 is not excessive. It is true that plaintiff's farm was mortgaged for $1,200, but defendants knew its value, and plaintiff gave Becker a mortgage on the Omaha property for that sum in addition to assuming an existing mortgage of $3,750. In this respect the trial court will be sustained.

It is finally insisted that, in any event, Brennan had no part in the fraud and that he is not liable for damages. The false representations appeared in letters over his name. Becker was his agent and was an undisclosed owner of the property. Brennan introduced plaintiff to Becker and received a commission based on a false valu-

ation of $10,000. He shared the fruits of the fraudulent conduct. A principal who retains benefits derived from the fraudulent conduct of his agent is chargeable with the instrumentalities employed by the agent in carrying out the fraudulent purpose. *McKeighan v. Hopkins,* 19 Neb. 33; *Osborn Co. v. Jordan,* 52 Neb. 465.

No reversible error has been found, and the judgment is

AFFIRMED.