[Civ. No. 3233. Third Appellate District.—October 14, 1927.]

STATE FINANCE COMPANY (a Corporation), Appellant, v. PETER ISAACSON, Respondent.

114

Goldman & Altman and Edgar Sinton for Appellant.

W. H. Carlin, W. E. Davies and Warren Steel for Respondent.

PLUMMER, J.—On the twenty-fifth day of July, 1925, one Ed. L. Wissler, a dealer in new and second-hand automobiles, at Marysville, California, entered into a contract of conditional sale with one Emanuel Kanupes, for a certain automobile known and called a "Jewett Businessman's Coupe." This contract set forth the purchase price of the automobile, the payment thereon of the sum of $440 upon the signing of the contract, and the balance thereof to be paid in monthly installments ending on the first day of February, 1927. The contract specifies that the purchaser agreed to make such payments according to the terms of the contract; that in the event of a failure to make such payments, the seller might repossess himself of said automobile and sell the same, and apply the proceeds thereof upon the contract, or might declare all of the unpaid installments immediately due upon the contract and bring suit therefor. The title to the property was reserved to the seller and was to remain in him until the full completion of the contract. Immediately upon the execution of this contract the said Wissler sold and transferred all of his right, title,

and interest in and to the property, and also to the conditional sales agreement, to the plaintiff in this action, and further guaranteed that the purchaser named in the conditional contract would comply with all the requirements thereof. The buyer of the automobile under the conditional agreement made one payment to the plaintiff herein and then defaulted. After the default of the buyer the plaintiff herein located the automobile in question in Fresno, took possession thereof, and placed the same in a garage in the city of Fresno. After doing this, the plaintiff, through its agent and representative, C. J. Busby, sent the garage check for the car to the original seller, Wissler, at Marysville, with directions to him to get the car and demanded that said Wissler pay to the State Finance Company the sum of $1,276 balance due on the contract. Wissler, either by himself or through one of his employees, after receiving the garage check, as herein stated, went to Fresno, received the car in question, and took it to Marysville, where it was placed upon the premises where Wissler was conducting the business hereinbefore referred to, the testimony also showing that Wissler maintained a garage in connection with his other business, the testimony being that Wissler, at Marysville, had a garage, a showroom, and a used-car lot and place out back for cars and a salesroom. The car was taken possession of by the State Finance Company and placed in a garage in Fresno, as above stated, late in November. Early in December, 1925, the agent of the plaintiff company saw the car at Wissler's place of business, but just where it is not stated. The testimony of some other witnesses is to the effect that the car was in the salesroom maintained by Wissler, and also that it stood for some days in the doorway or entrance thereto. Early in December, 1925, the automobile in question was sold to the defendant in this action, the defendant giving in exchange or purchase therefor to Wissler a car owned by him and the sum of $250. The car, at the time, contained no registration certificate. The purchaser being the defendant herein, requested new plates and a certificate, and was told the matter would be looked after. Upon cross-examination the agent Busby testified that he notified Wissler that his car was in Fresno and to come down and take it up to Marysville. This witness further testified: "I supposed

he would get the car in order to save storage charges on it in Fresno and probably take it to his own place of business.'' After stating that he had demanded payment from Wissler of the sum of $1,276, this witness testified that he made no other demand upon Wissler and that he gave him no other instructions. The witness further testified that he did not, and did not know of anyone giving instructions to Wissler to resell the car. The car was subsequently taken from the defendant's possession by the plaintiff and sold, and the proceeds thereof, in the sum of $1,100, applied upon the Kanupes contract hereinbefore referred to. The action herein was tried before a jury and the defendant was given judgment for the value of the car. From this judgment the plaintiff appeals.

Only one question is really tendered for decision herein. Do the facts which we have narrated in brief justify the conclusion that Wissler was given authority by the plaintiff to resell the ''Jewett'' automobile? Section 1142 of the Civil Code reads: ''Where the possession of personal property, together with the power to dispose thereof, is transferred by its owner to another person, an executed sale by the latter, while in possession, to a buyer in good faith and in the ordinary course of business, for value, transfers to such buyer the title of the former owner. . . . ''

The facts in this case differ from the circumstances upon which any of the cases cited to us by either appellant or respondent were decided. In the cases of *Kenny* v. *Christiansen*, 200 Cal. 419 [60 A. L. R. 1297, 253 Pac. 715]; *Carter* v. *Rowley*, 59 Cal. App. 486 [211 Pac. 267]; *Chucovich* v. *San Francisco Securities Co.*, 60 Cal. App. 700 [214 Pac. 263], there was testimony to the effect that the automobile dealer was given authority, in so many words, to make sales. In the case of *Pacific Acceptance Corp.* v. *Bank of Italy*, 59 Cal. App. 76 [209 Pac. 1024], possession only (the truck involved), went into the hands of Peniston for a short period of time. In that case the court in its opinion said: ''Conceding that the bank transferred the possession of the contract to Peniston, there is no evidence that it gave him power to dispose of this truck, which is also a condition to make the statute quoted above applicable.'' The statute referred to is the section of the Civil Code which we have cited. All that was done in that case was

that the owner of the truck permitted it to be used in certain work, together with other trucks which were being used by purchasers on the same job. The compensation earned by the trucks being used on the particular job in question, over and above the expense of operating the trucks, was turned over to the bank to be applied on Peniston's indebtedness. Peniston had already sold several trucks upon conditional contracts and assigned the contracts to the bank to secure a promissory note executed by him representing money borrowed from the bank. Nothing was done by the bank in that case indicating that the truck in question was turned back to Peniston, that the bank looked to him alone for payment, or had in anywise surrendered its security. In the case at bar the plaintiff not only relinquished its security and turned back the possession of the truck to Wissler when it sent him the garage check and notified him to retake the car, with the expectation and understanding that he would remove the car from Fresno to his place of business at Marysville, a distance of some 220 miles, but also demanded payment of Wissler of the balance due on the Kanupes contract which Wissler had guaranteed. What was the intent of the parties when this action was taken? Was it intended by any of the parties that the ''Jewett'' automobile should remain in the salesroom or upon the premises operated by Wissler for an indefinite period of time? Was it intended that Wissler should be looked to for the balance of the money due by the plaintiff rather than to its security, the possession of which it had voluntarily relinquished and restored to the custody of the original seller? The testimony, we think, is sufficient to show that the agent of the plaintiff saw the car upon Wissler's premises in a position and place which would indicate to the general public that the car was there for sale. If the plaintiff did not, by its acts in surrendering the possession of the car to Wissler and demanding payment of him, intend that Wissler should make resale of the property, the conduct of the plaintiff in relinquishing its security is not reasonably susceptible of explanation. There is no intimation that the plaintiff desired to escape storage charged for the car, but, on the contrary, the intent is evident that the plaintiff expected Wissler to take steps to secure himself against further expenses. This case is

more nearly analogous to that of *Carter* v. *Rowley*, 59 Cal. App. 486 [211 Pac. 267], where it is said that if the owner of an automobile, knowing that a certain dealer is engaged in the business of selling second-hand cars, delivers his machine to said dealer for the purpose of finding a purchaser, he thereby clothes such dealer with such *indicia* of authority to sell the car as usually accompanies such authority according to the custom of trade and general understanding of business men, etc. In the opinion in the case of *Carter* v. *Rowley, supra,* the court quotes with approval the language of Lord Ellenborough in *Pickering* v. *Busk,* 15 East (Eng.), 38, to wit: "If the principal sends his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale. If the owner of a horse sent it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale? When one sends goods to an auction room, can it be supposed that he sent them thither simply for safe custody? Where the commodity is sent in such a way and to such a place as to exhibit an apparent purpose of sale, the principal will be bound and the purchaser safe." In the Carter-Rowley case the distinction which we have made between this case and the case of the *Pacific Acceptance Corp.* v. *Bank of Italy* is likewise pointed out.

■ We think the fact that the Finance Company sent the storage check for the car to Wissler at Marysville, notifying him to get the car which was stored at Fresno, with the understanding that he should remove the same to his place of business at Marysville, and at the same time demanded from Wissler payment of the amount due on the contract which he had guaranteed, justified the jury in inferring therefrom that the plaintiff intended to, and did, confer upon Wissler the power to make resale of the car in question, and that upon resale thereof the purchaser from Wissler would receive a title good as against any of the claims of the plaintiff in this action.

That the provisions of the Motor Vehicle Act relative to registration of automobiles has no bearing upon the facts of this case appears from the case of *Boles* v. *Stiles,* 188 Cal. 304 [204 Pac. 848]; *Chucovich* v. *San Francisco Securities Co.,* 60 Cal. App. 700 [214 Pac. 263]; *Kenny* v. *Christiansen,*

200 Cal. 419 [50 A. L. R. 1297, 253 Pac. 715]. The appellant makes the further contention that no question of estoppel was raised by the defendant in his answer to the plaintiff's complaint in this action. The evidence which we have referred to, however, all came into the case without objection, and, in fact, was introduced by the plaintiff itself, and, therefore, if necessary to be pleaded, any defect in pleading was waived.

 As hereinbefore stated, we think the acts of the plaintiff justified the inference on the part of the jury that authority was given to Wissler to resell the car, and if it did not actually confer such authority, the plaintiff went so far as to bring itself within the terms of section 3543 of the Civil Code, to wit: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

The judgment of the trial court is affirmed.

Hart, Acting P. J., and Weyand, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 12, 1927.