FINANCE CORPORATION OF WYOMING v.
COMMERCIAL CREDIT CO.
(No. 1577; Jan. 15, 1930; 283 Pac. 1101)

For the plaintiff in error there was a brief by *Durham* and *Bacheller* of Casper, Wyoming, and oral argument by *E. Paul Bacheller.*

For the defendant there was a brief by *Curran* and *Cobb* of Casper, Wyoming, and oral argument by *Mr. William B. Cobb.*

RINER, Justice.

The defendant in error, Commercial Credit Company, a corporation, subsequently mentioned herein as the "plaintiff," obtained a judgment in its favor in the District Court of Natrona County against the plaintiff in error, Finance Corporation of Wyoming, also a corporation and hereinafter referred to as the "defendant." The latter brings the record here for review by proceedings in error.

The facts to be considered are not, in many respects, in controversy, and appear to be as follows:

During the year 1928, one Stanford was a licensed dealer in Star automobiles in the town of Glenrock, Wyoming, and owned and had in his possession a certain Star

coupe automobile. The latter part of January of that year, he sold it to a man by the name of Nichols, who did not pay the full purchase price therefor but gave a mortgage upon it, which was held by the defendant, through assignment from Stanford. Nichols assumed possession of the car and drove it for several thousand miles. Thereafter he became delinquent in the payments due on the machine, whereupon defendant, in satisfaction of the debt, and, so far as this record shows, with Nichols' full assent, took the car from him and placed it upon the floor of Stanford's garage, with instructions to the latter to sell it. There does not seem to be any dispute in the evidence that defendant gave Stanford full authority to dispose of this automobile.

On the day and about the time that the representative of defendant brought the car into Stanford's place of business to be sold as aforesaid, one Boehm, a representative of the plaintiff, arrived. Sometime that day or the next and on March 13, 1928, at the suggestion of Boehm, new papers were drawn. On this occasion Stanford, however, did not give Nichols a bill of sale for the car. His testimony concerning what was done being, briefly: ''I didn't sell it to him the second time, I only refinanced it the second time.'' Nichols signed a note for $746.60, payable in twelve specified monthly installments to the order of Stanford, the note stating that it was secured by a chattel mortgage. This chattel mortgage, also executed and acknowledged by Nichols in favor of Stanford, recited that the indebtedness which the mortgage intended to secure was in the amount set out in the note aforesaid and particularly described both by serial number and motor number the Star coupe left with Stanford for sale by the defendant as the property mortgaged. Other statements contained in the mortgage and its assignment, presently to be mentioned, will be referred to later.

The note was endorsed without recourse by Stanford to the plaintiff, an assignment of the chattel mortgage upon the car was also made to it by him, and all these papers—the note, mortgage and assignment thereof—were placed in an envelope upon whose face was a sight draft drawn by Stanford upon plaintiff for the sum of $660. The difference between this amount and the face of the note appears to have represented plaintiff's handling charge in the matter. The sight draft with its accompanying papers was sent through banks by Stanford to Denver, where the plaintiff had its principal office in this territory and where the draft was immediately taken up and paid by plaintiff, which then, in due course, received the envelope and its contents. In addition to the form of sight draft on the envelope, there appeared the following over Stanford's signature:

"I, we, hereby agree that if, after your payment of the amount stated above for your purchase of the transaction or transactions covered by the papers herein, your subsequent investigations of any of the parties, papers or transactions are unsatisfactory to you, I, we, will repurchase the same and will honor your draft with such enclosure attached, for the amount you have paid for same, not later than twenty days after such payment by you."

Stanford duly received the money thus advanced by plaintiff, and turned it over to and it was accepted by the defendant in payment for its interest in the Star coupe obtained in the manner above related.

On April 3, 1928, and within the twenty day period mentioned in Stanford's agreement just quoted, the plaintiff, not satisfied with its investigation concerning the matter, notified Stanford that he would be expected to repurchase the papers aforesaid, and accordingly drew on him for the amount previously advanced by it. This draft was not paid by Stanford, and negotiations extending over a number of weeks ensued between him and plaintiff in the

course of the latter's effort to obtain from him the agreed repurchase and repayment. Ultimately Stanford sent plaintiff, on account of the agreement, the sum of $300, leaving the remaining $330 unpaid.

Meanwhile the Star coupe had never left the possession of Stanford. Nichols had made no claim for it, but merely, on April 9th, sent a letter to plaintiff, received by the latter on the 11th of that month, notifying it of Stanford's possession of the car and inquiring as to what he (Nichols) should do. After Stanford learned of the attitude of the plaintiff concerning the transaction, as shown by its demand that he repurchase the paper and its draft upon him for the money previously paid out by it, he again endeavored to sell the car and succeeded in doing so to one Peterson on April 24, 1928. This action, on his part, appears to have been taken upon his own initiative, as he does not testify that he was given authority by plaintiff or anyone else to make the second sale. He states that Boehm, plaintiff's representative, who had no authority in the matter, knew that the car was for sale. Plaintiff's credit manager, however, gave testimony that it did not know that Stanford held the car in its possession for the purpose of selling it, did not learn it had been sold until June 18, 1928, and that no permission had been given Stanford by plaintiff to sell the car.

The sale to Peterson by Stanford was handled apparently in the same manner as the original Nichols' deal, i. e. Stanford took a note and mortgage from Peterson for the unpaid balance due on the automobile and transferred them to the defendant, which thereupon advanced in the neighborhood of $600 to Stanford on account of the transfer. What was done with this money by Stanford does not appear, but it was not used to pay off the debt to plaintiff.

Stanford, as defendant's witness, when asked on cross-examination whether he told defendant that there was a

mortgage on the car when he turned over the Peterson papers to it, testified: "No, sir." And in response to the following question: "Why not?" replied: "Not that I remember. Well I thought they were just as familiar with some things as I was. They knew it was the car Nichols had before." An employee of the defendant, as a witness in its behalf, stated that it did not know when it accepted the Peterson paper that the car was the same one involved in the transaction with Nichols and did not learn that fact until shortly before the institution of this action. Peterson, after a short time in possession of the car, failed to keep up his payments due on the note and mortgage he had given and defendant took possession of the automobile.

Nichols made no payments on account of the note and mortgage he had last executed. Consequently the plaintiff, being unable to collect the balance due it from Stanford and having learned of the Peterson sale and that defendant had taken possession of the car, instituted this action in replevin, gave bond and obtained the automobile. The case was tried without a jury and the court found generally in favor of the plaintiff, and a judgment was entered in its favor for the possession of the car, or in lieu thereof the sum of $500—that amount being found to be the value of the personal property in question and $250 as damages, attorney's fees and expenses of the repossession of said property. To the court's order overruling defendant's motion for a new trial an exception was duly saved by defendant and the cause was brought here for review.

For the defendant it is first urged that because the plaintiff refused to accept the note and mortgage signed by Nichols and assigned to it by Stanford, that it could claim no lien upon the property by reason of the mortgage, nor could it claim any debt due it from Nichols. This is asserted, too, in connection with the additional

contention that plaintiff, by its conduct, waived its rights under that chattel mortgage.

We are inclined to think that defendant has overlooked some legal consequences flowing from the facts disclosed by this record. Reverting to the first mortgage given by Nichols upon the Star coupe in question and which was held by defendant through Stanford's assignment to him, when Nichols failed to meet his payments, defendant, apparently, with Nichols' consent, took possession of the car, as it probably had a right to do under the terms of its mortgage. This act was undoubtedly treated by the parties to the transaction as a foreclosure of the defendant's mortgage. In Hixon v. Hubbell, 4 Okla. 224, 44 Pac. 222, 223, it is said:

"It has frequently been held that, after default in the mortgage, the mortgagee may replevin the mortgaged property, and an actual surrender of the property to the mortgagee and delivery of possession divest the title of the mortgagor as completely as an unconditional bill of sale."

To the same effect is 11 C. J. 695, Sec. 486. The subsequent action of the defendant, in dealing with the car, also confirms this view. The defendant took the automobile to Stanford—who no longer had any interest therein —placed him in possession of it and directed him to sell it. As heretofore pointed out, it is undisputed that Stanford had full power given him by the defendant to dispose of the Star coupe. He was made defendant's agent for that purpose. Although neither Stanford nor Nichols had any interest in the car on March 13, 1928, yet the papers they executed and transferred to plaintiff represented to it that a sale had been made by Stanford to Nichols and that the latter had given the chattel mortgage to the former to secure an unpaid purchase price on the car. The plaintiff purchased the note and mortgage signed by Nichols and turned over to it by Stanford on the date last

mentioned, necessarily relying on these statements made by him and Nichols. These and other statements made by defendant's agent Stanford in the papers were not true.

We cannot agree with defendant's contention that plaintiff refused to accept the note and mortgage. On the contrary, we think it did accept them and paid over to Stanford the sum of $660 purchase price, and then placed the chattel mortgage so obtained on record. When its investigations touching the paper proved unsatisfactory and hence it was deemed unwise to longer retain it, plaintiff thereupon demanded that Stanford fulfill his agreement to repurchase the same.

We do not think it can be properly said, either, that plaintiff waived its rights under the note and mortgage thus taken by it, because it sought over a period of some time to get its money back from Stanford alone under the latter's written promise to repurchase the paper. Doubtless too, it at first considered that method easier, more expeditious and less expensive than to institute foreclosure proceedings on the chattel mortgage owned by it. However that may be, we think it had the right to pursue either method until it recovered the amount it had advanced.

Finally the plaintiff secured $300 from Stanford. After sundry efforts to get more, it concluded that no more could be obtained from that source and it then turned to the Nichols' note and mortgage, in order to realize the balance of the money it had advanced. We do not know of any reason why it was bound to exercise haste in instituting foreclosure proceedings. Its mortgage was properly on record. As said in 5 R. C. L. 465, Sec. 100:

"In general a mortgagee need not foreclose at once when it becomes due. There is no limit to the lifetime of a mortgage, and the mortgagee's right to foreclose, except by statute, or until the debt is paid or barred."

An interesting case, in some respects resembling that at bar, is Chucovich v. San Francisco Securities Corporation, 60 Cal. App. 700, 214 Pac. 263, where it appeared that the Knox Company, a retail dealer in automobiles, owned a truck, which it sold to one. Brooks, on a conditional sale contract; that thereafter it assigned all its rights in that contract to the Securities Corporation; that Brooks, not keeping up his payments, the Knox Company, acting under instructions from the Securities Corporation, repossessed itself of the truck and made arrangements for its resale; that thereafter Knox, who had, in the meanwhile, succeeded to the rights of the Knox Company, sold the truck, under a conditional sale contract, to Chucovich, who took possession, paid part of the purchase price down and gave notes for the balance due, which he subsequently met; that Knox appropriated to his own use the down payment and also the proceeds of the notes which he had sold to another financing company; that the Securities Corporation knew nothing of the sale to Chucovich until after it was completed and the latter had possession of the truck; and that upon learning the facts, the Securities Corporation took the truck from Chucovich without his consent, whereupon the latter brought suit to recover. In affirming a judgment against the Securities Corporation the court said:

"But whether authority was given to Knox personally or to the firm which he represented is to our minds of no consequence. The record does not disclose, so far as we have been able to ascertain, whether the Knox-Mundorff Company was a partnership or corporation; but, however that may be as a member of that concern Knox had authority to make sales and to convey title. The Securities Company, having given it possession of the property for sale, was bound by its acts. It is a familiar maxim of jurisprudence that, where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer. Section 3543, Civ. Code. Appellant Securities Company had not only clothed Knox,

but also his company, with control and possession and with express power of disposition of the property; and under such circumstances appellant is estopped to deny the authority of Knox or his company as against an innocent purchaser. Shirey v. All Day & All Night Bank, 166 Cal. 50, 134 Pac. 1001; Fowles v. First Nat. Bank of Cal., 167 Cal. 653, 140 Pac. 271.

"We conclude, therefore, upon this question that Knox had complete authority to and that he did convey a valid title in the property to the respondent."

Of similar purport on principle are the following cases: Carter v. Rowley, 59 Cal. App. 486, 211 Pac. 267; Illinois etc. Co. v. Gardner, 249 Ill. App. 337; Truck etc. Co. v. Baker, 281 Pa. 145, 126 Atl. 239; Rapp v. Hauger Motor Co., 77 Cal. App. 417, 246 Pac. 1067; State Finance Co. v. Isaacson, 86 Cal. App. 113, 260 Pac. 580.

Mr. Bigelow, in his well known work on estoppel, refers to the rule applied in the decision quoted from above in these words:

"In accordance with this case it is now a well-established principle that where the true owner of property, for however short a time, holds out another, or, with knowledge of his own right, allows another to appear, as the owner of or as having full power of disposition over the property, the same being in the latter's *actual* possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected."

Again, where a party's agents had by untrue representations induced another to purchase a piece of machinery and that party took and retained the proceeds of the transaction, speaking of the contention made on behalf of the principal that it was not bound by unauthorized acts of its agents done without its knowledge, the court said in Roseberry v. Hart-Parr Co., 145 Minn. 161, 176 N. W. 175:

"This contention runs counter to a settled principle of the law of agency. It is this: When a principal retains the benefits of a contract obtained for him by his agent, he cannot repudiate the acts of the agent which induced the other party to the contract to enter into it on the ground that such acts were unauthorized. Defendant is here insisting that it has the right to retain plaintiff's notes and the Universal tractor. It may be granted that in the first instance it neither authorized nor knew of the representations made by its agents, but when this action was brought and it asserted a right to the fruits of their acts, even though they were done without authority, it assumed the same responsibility for them as though they had been authorized and were within its knowledge originally. This court has stated the rule substantially as follows: One who adopts the unauthorized act of another done in his behalf and receives the benefits thereof is held to adopt and ratify the instrumentalities by which such benefits were obtained."

See also Williamson v. Tyson, 105 Ala. 644, 17 So. 336; Elwell v. Chamberlin, 31 N. Y. 611; Owen v. Jones, 68 Ore. 311, 136 Pac. 332.

Having in mind that the record shows without dispute that defendant accepted without question the proceeds of the transaction carried on by Stanford, its agent, with the plaintiff, the defendant certainly must be held to be estopped to question any want of authority he may have had in executing the papers therein as he did. Defendant knew that the money Stanford turned over to it was the proceeds of the property it had left with him for sale. It was familiar also with his method of making sales for it was financing his paper. The means of ascertaining all the facts of the transaction were easily within its power to ascertain. Indeed defendant had placed Stanford in a position enabling him, in dealing with third parties, to do exactly what he did do. It does not appear from the record that plaintiff's representative Boehm knew what interest the defendant held in the car. At any rate, when the plaintiff paid over its money for the note and mort-

gage, which Nichols executed and defendant's agent Stanford assigned to plaintiff, and the defendant without complaint accepted that money, it is perfectly clear, under the authorities cited above and in our view of the matter, that the defendant should be estopped from denying the validity of that note and mortgage in the hands of plaintiff. Necessarily the respective rights of the parties thus outlined continued so in the case unless after that transaction was completed something occurred to change their status.

It is next said that this change did occur when Stanford, with the knowledge of plaintiff, after April 11, 1928, retained possession of the car, kept it on his floor for sale and ultimately sold it to Peterson, who executed the note and mortgage thereon to Stanford, which the latter thereupon for value assigned to the defendant and which it now holds, claiming to be an innocent purchaser thereof. But this contention, we think, lays out of view some elements in the case which cannot be disregarded.

The testimony is conflicting whether plaintiff knew of Stanford's attempt to sell the car, after selling the note and mortgage to it, and also whether the defendant, at the time it took over the Peterson paper, knew that the car covered by such paper was the same vehicle as in the previous Nichols' transaction, but the general finding of the court below against the defendant would appear to resolve these questions adversely to it, i. e. the first one in the negative and the last in the affirmative.

Under the court's finding then, the defendant, when it took the Peterson paper, must be held to have known that that paper covered the identical car involved in the Nichols' transaction with the defendant. It knew this fact, too, through its agent Stanford in that deal. Further, it may not claim it had no knowledge that plaintiff held a mortgage upon the car in question. As said by the court in Dresher v. Becker, 88 Neb. 619, 130 N. W. 275:

"A principal who retains benefits derived from the fraudulent conduct of his agent is chargeable with the instrumentalities employed by the agent in carrying out the fraudulent purpose. McKeighan v. Hopkins, 19 Neb. 34, 26 N. W. 614; Osborn v. Jordan, 52 Neb. 465, 72 N. W. 479."

To the same effect are Tylee v. Illinois Central R. Co., 97 Neb. 646, 150 N. W. 1015; Davenport v. Burke, 30 Ida. 599, 167 Pac. 481; Hammitt v. Virginia Mining Co., 32 Ida. 245, 181 Pac. 336.

In McIntire v. Pryor, 173 U. S. 38, 19 Sup. Ct. 352, 43 L. Ed. 606, it was held that where frauds are committed by an agent in procuring title to property for the benefit of his principal, the principal is chargeable therewith in the same manner as if he had committed them personally.

See also Stockwell v. United States, 13 Wall. 531, 20 L. Ed. 491.

And in 21 R. C. L. 851, Sec. 30, it is said:

"It seems that the rule declaring that where one of two innocent parties must suffer from the fraud of a third, he who furnishes the means to commit it must bear the loss, is applicable to cases in which the party chargeable makes the third party his real or apparent agent, or in which he provides the means intentionally, or for a dishonest purpose, or negligently, or where he derives a benefit from the fraud of the third party."

Had there been an actual sale from Stanford to Nichols, the general proposition, well settled in the law of agency, might apply, viz.: that a "principal is affected with constructive knowledge, regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform his principal thereof." 2 C. J. 859, Sec. 542, and elaborate list of cases cited. Under the facts shown by this record, we are not pre-

pared to say that this rule is not operative against the defendant here, so far as the plaintiff is affected by the acts of the agent Stanford. It is not, however, necessary to so decide. Our conclusion is, therefore, that defendant cannot be regarded as a purchaser in good faith for value and its mortgage cannot be permitted to stand as against that of the plaintiff.

The judgment under review, after properly decreeing to the plaintiff possession of the Star coupe, proceeds:

"Or, in lieu thereof, the sum of Five Hundred Dollars ($500.00), the same being the value of said personal property, and that plaintiff do have and recover said amount of money from defendant, and, in addition thereto, the sum of Two Hundred Fifty Dollars ($250.00) as damages, attorneys fees and expenses of re-possession of said personal property, together with plaintiff's costs herein incurred, taxed at .............................. Dollars."

Under the circumstances of this case, an alternative judgment was wholly improper. Here the plaintiff obtained the property upon the writ of replevin and was rightly adjudged entitled to its possession, but it could not have a money judgment in lieu thereof. Section 6286, Compiled Statutes of Wyoming 1920, indicates the proper judgment which should have been entered. See also Boswell v. First National Bank, 16 Wyo. 161, 92 Pac. 624, 93 Pac. 661; Hunt v. Thompson, 19 Wyo. 523, 120 Pac. 181, 122 Pac. 624.

Again, there was no proof whatsoever submitted to the court of any damages suffered by plaintiff and hence the allowed recovery of the sum of $250 on that account was erroneous. It may be proper to say, at this point, that attorneys' fees in such a case cannot be allowed. Knight v. Beckwith Commercial Co., 6 Wyo. 500, 46 Pac. 1094, 34 Cyc. 1565.

From what we have said, it follows that the judgment should be reversed for further proceedings not incon-

sistent with the views expressed in this opinion, a new trial to be had only for the purpose of determining plaintiff's damages, if any, and each party paying its own costs in this court.

BLUME, C. J., and KIMBALL, J., concur.