[Civ. No. 870. Fourth Appellate District.—September 21, 1931.]

OSCAR MOSS, as Administrator, etc., Appellant, v. H. D. BOWMAN, Respondent.

Harrison G. Sloane and Maurice Saeta for Appellant.

Wright & McKee and C. M. Monroe for Respondent.

MARKS, J.—This is an action brought for the recovery of the possession of a Pierce Arrow automobile. The respondent had judgment in the court below and plaintiff has taken this appeal.

Prior to August 1, 1929, Max Jacobs was transacting the business of lending money to finance the sale and purchase of automobiles under the fictitious name of the Universal Finance Company. After the controversy here involved had arisen and before suit was filed he died and Moe Jacobs was appointed and qualified as executor of his estate. During the pendency of this appeal Moe Jacobs died and Oscar Moss was appointed and qualified as administrator with the will annexed of the estate of Max Jacobs, deceased, and has been substituted in the place of Moe Jacobs as the plaintiff and appellant herein.

The Sammis-McBrien Company, a partnership, were agents for the sale of Pierce Arrow automobiles in the city of San Diego. The partnership maintained a show and sales-

room in that city. When an automobile was sold upon credit, it was its custom to execute a conditional sales contract with the purchaser providing for deferred payments at stated intervals, and to assign these contracts to the Universal Finance Company, the partnership guaranteeing the deferred payments. Probably 120 of such contracts were so negotiated annually. Registration slips on each of the cars were issued showing the Finance Company as the legal owner of the car, and the pink slips delivered to it.

Between ten and fifteen purchasers defaulted in their payments annually and their cars were repossessed. In every instance except in the pending case the automobiles were repossessed by the Sammis-McBrien Company, placed in their salesroom and resold by it. Each new contract was assigned to the Universal Finance Company to take up the defaulted contract on the same car. In no instance was any repossessed car delivered to Max Jacobs or his Finance Company. Generally, the deferred payments on the contracts were made to the Sammis-McBrien Company and by it remitted to the Finance Company. In a few instances, purchasers made payments direct to the Finance Company.

In cases where purchasers became delinquent in their payments it was the universal custom of Max Jacobs to notify the Sammis-McBrien Company to either collect the delinquencies or repossess the automobiles. Those repossessed were resold according to the custom we have already described. Whether or not this custom originated in an express contract or developed during the business relations between the parties does not appear from the record. That it was universally followed is not disputed.

On March 19, 1928, the Sammis-McBrien Company was the owner of a Pierce Arrow sedan, which it sold to George E. Short, who executed a conditional sales contract for the unpaid balance of the purchase price, payable in monthly installments of $167. The general terms of such contracts are too well known to the bench and bar of California to need elaboration here. The contract was assigned to the Universal Finance Company and the registration slips issued showing it as legal owner and George E. Short as registered owner of the car, and the pink slip delivered to it on or about May 9, 1929.

Under date of May 15, 1929, the Universal Finance Company wrote the Sammis-McBrien Company in part as follows:

"Up to this date we have heard nothing from you in regard to delinquent accounts which we have written you several days ago. Some of these accounts are now long past due and we must ask that you kindly make the collection on same or repossess automobiles at once as we do not wish to have the delinquent accounts like they were a month ago. . . .

"Geo. E. Short. First payment on contract in the amount of $167.40 was due on the 8th day of May. This payment is now one week past due and we ask that you get in touch with Mr. Short and collect the payment."

The Sammis-McBrien Company was evidently successful in collecting this payment from Short and remitted it to the Finance Company.

Under date of June 11, 1929, the Universal Finance Company again wrote the Sammis-McBrien Company in part as follows: "To date the delinquents on your accounts are as follows: . . . Geo. E. Short due June 8th." On an undisclosed date another letter was sent in part as follows: "The following accounts are still unpaid; . . . Geo. E. Short."

Some time between May 9, 1929, and June 10, 1929, Short became financially unable to continue his payments on his conditional sales contract and returned the automobile to the Sammis-McBrien Company. The record describes the subsequent transactions concerning the car as follows:

"That thereafter, Sammis-McBrien Co. repossessed such automobile from Short and placed the same on its premises with other cars displayed for sale.

"That on or about June 10, 1929, defendant H. D. Bowman, acting in good faith, and without actual knowledge of any claim of ownership on the part of Universal Finance Co., agreed to purchase such automobile and executed and delivered to Sammis-McBrien Co. a memorandum, a copy of which Exhibit A, is hereafter referred to. That said Sammis-McBrien Co. executed and delivered to said defendant a memorandum, Exhibit B, hereafter referred to. That said defendant, as a part of the agreed price, transferred and delivered to Sammis-McBrien Co. his Chrysler automobile at

the agreed valuation of $800.00; that Sammis-McBrien Co. thereupon delivered such Pierce Arrow automobile to defendant and he has ever since had possession thereof.

"That on or about July 10, 1929, defendant paid to Sammis-McBrien Co. the sum of $167.00 on account of such purchase price and said Sammis-McBrien Co. purported to forward the same to Universal Finance Co. by its check, . . . ; that such check was dishonored by the Bank on which it was drawn for lack of funds and Universal Finance Co. has never received such, or any further, installment.

"That Universal Finance Co., on or about September, 1929, made demand upon said defendant for possession of said automobile; that said defendant refused to deliver the same and asserted his right thereto under and by virtue of such purchase from Sammis-McBrien Co. and said defendant then and ·at all times thereafter offered and agreed to pay to Universal Finance Co. in the installments agreed upon, the balance of such purchase price, aggregating $833, but such offer was at all times refused and no further payments have been made to Universal Finance Co. or to Sammis-McBrien Co.

"That Sammis-McBrien Co. subsequent to June 10, 1929, sold such Chrysler automobile to one Leo Hennequin upon a conditional contract of sale. . . . That such contract was for a valuable consideration assigned to Universal Finance Co., and after default of said Hennequin, said Universal Finance Co. repossessed such Chrysler automobile."

Respondent filed an answer denying that appellant's predecessor was the owner of or entitled to the possession of the automobile. It alleged that the Sammis-McBrien Company was the agent of Max Jacobs and the Universal Finance Company in the transaction, and set forth the other foregoing facts by way of answer and as an estoppel. He also alleged that subsequent to June 10, 1929, the Sammis-McBrien Company was adjudged a bankrupt by the United States District Court and that on September 14, 1929, Moe Jacobs, as executor, filed with the referee in bankruptcy a claim against the bankrupt estate in the sum of $7,754.94, which included the sum of $1674 unpaid on the George E. Short contract. These facts are admitted. This claim was allowed in full, but nothing paid thereon at the time of trial. The claim was filed five days after the Universal Finance

Company made demand upon respondent for the possession of the automobile. In his answer defendant tendered to the plaintiff the unpaid portion of the purchase price of the automobile ($833), and filed a cross-complaint in which he asked the court to determine the respective interests in the car and that the only interest the plaintiff had in the automobile was to recover the unpaid portion of the purchase price, not to exceed $833.

The trial court found against the plaintiff on all issues presented by the complaint and that the Sammis-McBrien Company was the agent of Max Jabobs and the Universal Finance Company in repossessing the automobile from Short, and in the subsequent transactions with the defendant. It also found in favor of the defendant on all the special defenses but failed to find on the issue presented by the defendant as to the balance of $833, which he admitted owing on the purchase price of the car and which he offered to pay. A special finding was made as follows:

"That at the time of the sale of said automobile to defendant as aforesaid, neither plaintiff nor said Universal Finance Corporation knew that said automobile had been repossessed by said Sammis-McBrien Company. That defendant did not know of any agency or of the ownership of said car by the plaintiff."

The judgment followed the findings and merely decreed that defendant was the owner and entitled to the possession of the automobile "and that the plaintiff, Moe Jacobs, and the estate of Max Jacobs, deceased, who did business under the fictitious name and style of Universal Finance Company, nor either of them, have any right, title or interest in or lien or claim upon said automobile".

At the time the defendant executed his conditional sales contract with the Sammis-McBrien Company he received the usual receipt certifying that the change of registration of the car would be made in accordance with law and a new certificate issued to him as registered owner. Under these circumstances it has been held, with special reference to section 45 of the California Vehicle Act, "that the provisions of the California Vehicle Act relative to the registration of automobile have no bearing upon the facts of this case appears from the case of *Boles* v. *Stiles*, 188 Cal. 304 [204 Pac. 848]; *Chucovich* v. *San Francisco Securities Co.*, 60

Cal. App. 700 [214 Pac. 263]; *Kenny* v. *Christiansen,* 200 Cal. 419 [50 A. L. R. 1297, 253 Pac. 715]''. (*State Finance Co.* v. *Isaacson,* 86 Cal. App. 113 [260 Pac. 580, 582].)

The first question for our consideration is whether or not the finding that the Sammis-McBrien Company was the agent of Max Jacobs and his Finance Company in the sale of the car to the defendant is supported by the evidence.

Section 2307 of the Civil Code provides as follows:

"Creation of agency. An agency may be created and an authority may be conferred, by a precedent authorization or a subsequent ratification.''

In 1 California Jurisprudence, page 695, it is said:

"In the case of either antecedent authority, or subsequent ratification, the act of conferring authority upon the agent may be either express or implied. . . . Indeed, under appropriate circumstances, the rights and liabilities of agency may be created by implication of the law, as in the case of agency by estoppel, or ostensible agency.''

We have concluded that the proof of the long-continued custom followed by Max Jacobs and the Sammis-McBrien Company without deviation therefrom, of permitting the latter to repossess cars upon which the payments had become delinquent, placing them among its own cars and in its own showroom for sale and selling them to innocent purchasers for value with Jacobs accepting the purchase price of the new sale in every case except the instant one, must be held to constitute sufficient evidence of agency to support the finding.

This case comes squarely within the language contained in *Carter* v. *Rowley,* 59 Cal. App. 486 [211 Pac. 267, 269], as follows:

" 'If the principal,' says Lord Ellenborough in *Pickering* v. *Bush, supra,* (15 East [Eng.], 38) 'send his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale. If the owner of a horse send it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale? Or if one send goods to an auction-room, can it be supposed that he sent them thither merely for safe custody? Where the commodity is sent in such a way and to such a place as to exhibit an apparent purpose of sale, the principal

will be bound, and the purchaser safe.' And in the same case Judge Bayley, in a concurring opinion, states the rule as follows: 'It may be admitted that the plaintiff did not give Swallow any express authority to sell; but an implied authority may be given; and if a person put goods into the custody of another whose common business it is to sell, without limiting his authority, he thereby confers an implied authority upon him to sell them.' ' ''

Certainly the undisclosed principal should be held estopped to deny the agency to the damage of an innocent purchaser. (*State Finance Co.* v. *Isaacson, supra; General Securities Corp.* v. *Reo Motor Car Co.,* 91 Cal. App. 16 [266 Pac. 576, 577].)

Section 3543 of the Civil Code provides that ''where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer''. We think that the conduct of Max Jacobs in this transaction, if it did not confer actual authority upon the Sammis-McBrien Company to sell the automobile to the defendant was such as to bring him within the provisions of the section we have last quoted. (*State Finance Co.* v. *Isaacson, supra; General Securities Corp.* v. *Reo Motor Car Co., supra.*) In the latter case it was said:

''In *Shirey* v. *All Night and Day Bank,* 166 Cal. 50 [134 Pac. 1001], the court said: 'Where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence, or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.' (*Schultz* v. *McLean,* 93 Cal. 329 [28 Pac. 1053]; *Gardiner* v. *McDonough,* 147 Cal. 313 [81 Pac. 964]; *Chucovich* v. *San Francisco Securities Corp.,* 60 Cal. App. 700 [214 Pac. 263].)''

In the case of *Powers* v. *Pacific Diesel Engine Co.,* 206 Cal. 334 [73 A. L. R. 1398, 274 Pac. 512, 514], it was said:

" . . . that where the true owner clothes another with the indicia of ownership of property and therefore the apparent authority to transfer title thereto, and innocent third parties are thereby led into dealing with such apparent owner, the true owner will be estopped to deny that the apparent authority is the real authority. (Code Civ. Proc., sec. 1962, subd. 3.) In such cases the equities are found to be in favor of the *bona fide* purchaser rather than in favor of the owner who has by his own conduct clothed another with the power to commit the fraud."

Under the facts of the instant case the defendant could, under proper pleading, have the court determine the respective interests in the car and the amount unpaid upon the purchase price under his contracts with the agents, as against the undisclosed principal. (*Hulsman* v. *Ireland,* 205 Cal. 345 [270 Pac. 948].)

While the trial court decided the question of the ownership of the car it did not dispose of the question of the amount unpaid by the defendant upon his contract of purchase. The net results of the judgment rendered are as follows: The plaintiff lost title to the car and lost his security for the unpaid balance of the money he advanced on the Short contract and received therefor an allowed claim against the bankrupt estate of the Sammis-McBrien Company, upon which nothing had been paid at the time of trial. The amount of the probable dividends upon this claim, if any, do not appear. The estate of the bankrupt has, as one of its liabilities, an allowed claim in favor of the plaintiff in the sum of $1674, the full amount unpaid on the Short contract. The defendant has the automobile and $833, which he admits he owes to someone as part of the purchase price of the car. The trial court should have determined the issue raised by the defendant's pleadings as to the payment of this money to the plaintiff or to the receiver, or perhaps in part to both. The allowance of the claim against the bankrupt estate constitutes an adjudication of the issues presented by it and possibly may be held to be an election of remedies by the claimant. (*Martin Music Co.* v. *Robb,* 115 Cal. App. 414 [1 Pac. (2d) 1000].)

The case must be reversed to permit the trial court to dispose of the $833 admittedly owed to someone by the defendant. If proper consent can be obtained therefor, it

would be advisable to cause the cross-complaint to be amended and the referee of the bankrupt estate joined as cross-defendant, permitting the two cross-defendants to litigate the question of which one is entitled to all or part of the $833 owed by the defendant. The findings already made are complete upon the questions they purport to settle, are supported by the evidence and need not be disturbed. The trial court should take evidence and make findings upon the question of to whom the $833, or any part thereof, should be paid and render judgment in accordance with the present and such additional findings and the conclusions of law in accordance therewith.

Judgment reversed, with instructions to the trial court to take appropriate proceedings in accordance herewith.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 6, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 19, 1931.