ALLEN, Chief Judge.
The appellant, as plaintiff in the lower court, brought an action of replevin of an automobile which had been sold to the appellee-defendant by a dealer which plaintiff floor-plans. The plaintiff had not been paid for the auto which was covered by the floor plan agreement and at the time of the action held the certificate of title to the auto although no lien had been recorded in favor of plaintiff. The defendant answered the complaint and set up estoppel as an affirmative defense. After a stipulation of facts was filed with the court, a final summary judgment was entered for the defendant awarding damages for the detention of the auto.
The plaintiff finances commercial transactions including the floor-planning of automobiles for licensed automobile dealers. In January, 1957, the plaintiff entered into an agreement with Fitzgerald Motors, a retail used car dealer in Orlando. Under the terms of this agreement Fitzgerald Motors would purchase automobiles for resale on its used car lot. When the automobiles were purchased, Fitzgerald Motors would receive a title certificate endorsed in blank or a title certificate with a power of attor *53 ney from the owner authorizing a transfer of title, all signed in blank. Fitzgerald Motors would then take the blank title certificate to the plaintiff and execute to the plaintiff a chattel mortgage for the amount of the purchase price and give the title and the chattel mortgage to the plaintiff, which would then reimburse Fitzgerald Motors for the purchase price of the motor vehicle. Under the floor-plan agreement, Fitzgerald Motors was forbidden to deliver the motor ■vehicle to a purchaser until the above procedure had been completed.
When Fitzgerald Motors would sell a car and arrange for financing of the car for the purchaser, the dealer would then pay the plaintiff the amount of the mortgage and receive from the plaintiff the title certificate still endorsed in blank and would arrange to have the purchaser’s name placed on the title certificate and to have the title transferred to the purchaser.
During the period of the business relation between plaintiff and Fitzgerald Motors, between 100 and 200 cars were financed by the dealer with plaintiff under .the above procedure, and in no instance -was the title registered in the name of the ■plaintiff, nor its lien registered with the .•motor vehicle commissioner.
The automobile involved in the instant ■case was purchased by Fitzgerald Motors .at an auto auction on January 7, 1959. On January 7, 1959, J. E. Fitzgerald of Fitzgerald Motors executed to plaintiff a chattel mortgage in the amount of $1,256 and also delivered to plaintiff the title certificate, endorsed in blank, and received from the plaintiff $1,240 plus a credit receipt for a $16 service charge for plaintiff’s service. This automobile was to remain on the dealer’s lot and to be sold in the normal course of business.
On January 24, 1959, the defendant purchased the automobile from Fitzgerald Motors for $1,895 and was given a bill of sale showing that the defendant was allowed . $1,495 on his trade, and that the balance of $400 plus $4 tax and $1.50 transfer fee was paid in cash by defendant on the same date.
The defendant drove the car away that date and continued in possession thereof until the replevin action was instituted on February 20, 1959. No claim of lien had been filed by plaintiff until February 18, 1959, at which time it filled in the title certificate to show that it was the purchaser and showed a lien of $1,256 dated January 7, 1959. At no time prior to the replevin did the plaintiff have possession of the automobile.
It is alleged in the stipulation of fact that plaintiff knew of defendant’s purchase of the automobile on February 9, 1959, but did nothing to protect itself until February 18, 1959, at which time plaintiff became aware of the poor financial condition of Fitzgerald Motors. This latter date is when plaintiff filed its lien with the motor vehicle commissioner.
Upon the foregoing stipulated facts the lower court granted summary judgment for the defendant. The final judgment also stated :
“Considered, ordered and adjudged that the defendant do have and recover possession of the property described in the Complaint, to-wit: Vauxhall four-door sedan, Motor No. F4077493, Serial No. FD076002, together with all equipment attached to said automobile; and it is further
“Considered, ordered and adjudged that the defendant do have and recover of the plaintiff and plaintiff’s surety upon its forthcoming bond in the sum of $1800.00 the value of the property, and the further sum of $210.00 the value for its detention, besides his costs in his behalf expended and taxed herein at $25.50, for which therefore let execution issue.”
The above judgment is technically incorrect as it was stipulated that the automobile in question had been sold by the *54 plaintiff. We will consider the first of the two above quoted paragraphs in the final judgment as a surplusage and not send the same back for a correction since the attorneys for the appellant and the appellee stipulated that this paragraph could be disregarded.
We shall affirm the lower court on the authority of the case of Motor Credit Corporation v. Woolverton, Fla.1957, 99 So.2d 286, 288. In this case a suit was filed for a declaratory decree and for cancellation of a conditional sales agreement, under facts very similar to the facts in the case now before this court.
In the case of Motor Credit Corporation v. Woolverton, supra, a house trailer was purchased from a dealer. The trailer, when new, had been sold by the dealer to one Houghtaling under a conditional sale contract, the transaction being financed by the appellant finance company. The dealer, as conditional vendor, assigned the contract to the finance company under a “repurchase” assignment that obligated the dealer to pay to the finance company the balance owing under the contract if the trailer was repossessed from the conditional vendee. The finance company recorded its lien, as assignee of the contract in the,office of the Motor Vehicle Commissioner in Tallahassee. After making a few payments on the trailer the conditional vendee, Houghtaling, returned it to the dealer, who then sold it to the appellee, Mrs. Woolverton, without telling her about the finance company’s lien and without accounting to the finance company for the sale. Mrs. Woolverton did not obtain a certificate of title from the dealer — the dealer’s president, Mr. Sutton, stating that she would receive it in a few days — nor did Mrs. Woolverton check the records of the Motor Vehicle Commissioner in Tallahassee.
The finance company, when it learned of the sale, demanded payment from the dealer. The dealer, without revealing that the buyer had paid for the trailer in full, made several payments on the trailer on behalf of Mrs. Woolverton. Then the dealer filed a petition for voluntary bankruptcy, charging off its obligation to the finance company. The finance company advised Mrs. Woolverton that she must pay the balance due under the Houghtaling contract or the finance company would repossess the trailer. Mrs. Woolverton signed' a conditional sales agreement with the finance company. A suit was brought for-cancellation of such agreement.
The Court, in its opinion, said:
“The principle of law relied upon by the Chancellor in entering a decree in favor of Mrs. Woolverton was stated in Glass v. Continental Guaranty Corp., 81 Fla. 687, 88 So. 876, 879, 25 A.L.R. 312, as follows:
“ ‘But where an owner consigns personal property to a dealer in such goods with express or implied authority to sell, or delivers or consigns to another personal property with in-dicia of ownership, or of authority to-sell, but with title reserved in the owner until the payment of the purchase price, a purchaser, who pays-value for such goods and gets possession thereof without notice of the-terms or conditions of the original delivery, consignment, or sale, obtains a good title as against the original owner, which will in general prevaih against the latter’s reserved title.. [Citations.]
“ ‘Where one of two innocent parties-must suffer through the act or negligence of a third person, the loss should' .fall upon the one who by his conduct-created the circumstances which enabled the third party to perpetuate • [perpetrate] the wrong or cause the - loss.’
* * * * * *
“As to the effect of Sec. 319.22(1) on Mrs. Woolverton’s rights under the principle of law relied upon by the *55 Chancellor, quoted above, it is settled law in this jurisdiction, as in many others having a similar provision in their Certificate of Title Act, that the failure of the purchaser to obtain the title certificate at the time of sale does not prevent the passage of title from the seller to the buyer. * * *
“The Florida statute, like Louisiana’s provides that the purchaser shall not acquire a ‘marketable’ title until a .certificate of title is issued to him.
“The Louisiana Court said in Hammer v. Domingue, La.App.1955, 82 So.2d 105, 107, that the statute ‘does not -provide that no valid title shall be perfected until the purchaser obtains a -title certificate, but that no marketable ■title shall be perfected until that time. The term “marketable title” does not •connote that the vendor cannot sell, but that he cannot enforce an agree-ment to buy, in absence of same, Words & Phrases (Perm. Edition), Vol. 26A, pp. 35-55, Verbo “Marketable Title”.’
“By the assignment to it of the conditional sale contract, the finance company ‘took the shoes of the dealer, and 'by repossession the dealer took the ■shoes of an agent in possession with -title resting in [the finance company].’ Baer v. General Motor Acceptance Corp., 1931, 101 Fla. 913, 132 So. 817, 822. When the dealer has actual or implied authority to sell, a purchaser from the dealer takes title as if buying directly from the finance company, -under the general principles of agency. See O’Loughlin v. Erwin M. Jennings Co., Inc., supra, 140 A. 758; Commercial Credit Co. v. Blair, 1925, 84 Mont. 314, 275 P. 748; Moss v. Bowman, 1931, 116 Cal.App. 720, 3 P.2d 377. 'Thus the fact that no certificate of title was obtained by Mrs. Woolverton ■does not, of itself, invalidate the sale -.to her by the finance company’s agent. Moreover, it might be noted that the ¡finance company, although authorizing the dealer to resell the repossessed trailers and deliver the same to a purchaser before accounting to the finance company for the sale, did not turn over to the dealer the certificate of title covering a cash sale of a repossessed trailer until after the accounting by the dealer. In these circumstances to allow the finance company to take advantage of the purchaser’s not having a title certificate would be about as inconsistent as to allow the culprit who murdered his father and mother to beg for mercy on the ground that he was an orphan.”
In the case of Fogle v. General Credit, 1941, 74 App.D.C. 208, 122 F.2d 45, 50, 136 A.L.R. 814, in a case discussing the automobile registration acts of the District of Columbia, the United States Court of Appeals, in its opinion, said:
“The circumstances here are of that character and had that effect. Georgetown Motors was a dealer. Its business was selling cars — and buying them. It does not appear that it had any other. The car was delivered to it with the intention that it be offered for sale, that is, that it be placed in the dealer’s stock in trade to all appearances as part of it, in the dealer’s regular display room, without any notice or warning that it was subject to lien held by another, though this might easily have been attached, and that it be shown to customers in the regular course of trade. It is common knowledge that dealers frequently, if not always, take care of title transfers and registration, as well as licensing, as part of the transaction of sale, often completing these matters after receiving payment and making delivery. The dealer here was more than mortgagor in possession. He was agent for bringing about a sale. The circumstances were such that prospective purchasers naturally would be thrown off inquiry and it is not unrea *56 sonable to infer that defendant must have known that this was likely to occur. Furthermore, as we have said above, both the dealer and defendant were parties to a violation of the registration regulations in making such an arrangement without having the certificate of title placed in the dealer’s possession. Had they obeyed the regulation, the purchaser would have been entitled to rely upon the certificate as showing ownership in the dealer or would have been given actual knowledge by it concerning defendant’s lien. As against such a violation and facts so disarming, we think the constructive notice which recording would have given in their absence must be held ineffective. It strengthens this conclusion that it brings the recording act and the registration regulations into harmony.”
In the instant case we observe that Fitzgerald Motors, on purchase of an automobile, did receive a title certificate endorsed in blank or with a power of attorney from the owner authorizing a transfer of title, all signed in blank. Fitzgerald would then take the blank title certificate to the appellant, plaintiff below, and execute to it a chattel mortgage for the amount of the purchase price and give both the title certificate and the chattel mortgage to the plaintiff who would then reimburse Fitzgerald* Motors for the purchase price of the motor vehicle. When Fitzgerald Motors would sell the car under its floor-plan arrangements and arrange for the financing of the car for the purchaser, it would then pay the appellant the amount of the mortgage and receive from the appellant the title certificate still endorsed in blank and would arrange to have the purchaser’s name placed on the title certificate and have the title transferred to the purchaser. A large number of cars were financed' by the dealer, Fitzgerald Motors, with the appellant under the above procedure and in no instance was the mortgage or its lien registered with the Motor Vehicle Commissioner.
It is our opinion that the lower court was justified in holding that its decision should be governed by Motor Credit Corporation v. Woolverton, supra.
Affirmed.
KANNER and SHANNON, JJ., concur.