99 So.2d 286 (1957)
MOTOR CREDIT CORPORATION, a Delaware corporation authorized to do business in Florida, Appellant,
v.
Daisy WOOLVERTON, Appellee.
Supreme Court of Florida.
December 20, 1957.
*287 Joseph A. Hackney and Caldwell, Parker, Foster, Wigginton & Miller, Miami, for appellant.
Victor H. Eskenas, Miami, for appellee
ROBERTS, Justice.
On this appeal we are concerned with the impact of Sec. 319.22 and Sec. 319.27(2), Fla. Stat. 1955, F.S.A., of the Certificate of Title Act, Ch. 23658, Acts of 1947, on a purchase from a dealer of a motor vehicle within the purview of the Act  specifically, a house trailer.
The trailer, when new, had been sold by the dealer to one Houghtaling under a conditional sale contract, the transaction being financed by the appellant finance company. The dealer, as conditional vendor, assigned the contract to the finance company under a "repurchase" assignment that obligated the dealer to pay to the finance company the balance owing under the contract if the trailer was repossessed from the conditional vendee. The finance company recorded its lien, as assignee of the contract, in the office of the Motor Vehicle Commissioner in Tallahassee. *288 After making a few payments on the trailer the conditional vendee, Houghtaling, returned it to the dealer, who then sold it to the appellee, Mrs. Woolverton, without telling her about the finance company's lien and without accounting to the finance company for the sale. Mrs. Woolverton did not obtain a certificate of title from the dealer  the dealer's president, Mr. Sutton, stating that she would receive it in a few days  nor did Mrs. Woolverton check the records of the Motor Vehicle Commissioner in Tallahassee. She paid the dealer the full purchase price of the trailer.
When he learned of the sale of the repossessed trailer to Mrs. Woolverton, the finance company's manager, Mr. Langran, demanded payment from the dealer. Mr. Sutton, without revealing that Mrs. Woolverton had paid for the trailer in full, made several payments on the trailer ostensibly on behalf of Mrs. Woolverton. Then the dealer filed a petition for voluntary bankruptcy, charging off its obligation to the finance company under the "repurchase" assignment, and Mr. Langran advised Mrs. Woolverton that she must pay the balance due under the Houghtaling contract or the finance company would repossess the trailer. In the face of an impending dispossession from her home, Mrs. Woolverton, an elderly lady, signed a conditional sales agreement prepared by Mr. Langran by which Mr. Sutton, as president of the now bankrupt dealer corporation, purported to sell and she and Mr. Sutton, as co-purchasers and co-obligors, agreed to purchase the trailer and to pay therefor an amount equivalent to that remaining due under the Houghtaling contract. The Sutton-Woolverton contract was, of course, assigned by Sutton to the finance company.
The instant litigation was initiated by Mrs. Woolverton, who filed suit against the finance company for a declaratory decree, for an injunction against the enforcement of its lien by the finance company, and for cancellation of the conditional sales agreement signed by her and Sutton, referred to above. The Chancellor heard the evidence of the parties and granted the relief prayed for by Mrs. Woolverton. The finance company has appealed.
The principle of law relied upon by the Chancellor in entering a decree in favor of Mrs. Woolverton was stated in Glass v. Continental Guaranty Corp., 81 Fla. 687, 88 So. 876, 879, 25 A.L.R. 312, as follows:
"But where an owner consigns personal property to a dealer in such goods with express or implied authority to sell, or delivers or consigns to another personal property with indicia of ownership, or of authority to sell, but with title reserved in the owner until the payment of the purchase price, a purchaser, who pays value for such goods and gets possession thereof without notice of the terms or conditions of the original delivery, consignment, or sale, obtains a good title as against the original owner, which will in general prevail against the latter's reserved title. [Citations.]
"Where one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetuate [perpetrate] the wrong or cause the loss."
This same principle is equally applicable to the circumstances of the instant case. As stated in 47 Am.Jur., Sec. 937, p. 145:
"Where a dealer has parted with possession of property conditionally sold but has regained possession of it, as upon retaking after default of the purchaser, without authorization of the assignee and without his knowledge or consent, a subsequent purchaser from the dealer does not obtain title as against the assignee. However, if the assignee of the conditional sales contract expressly or impliedly consents to the resale after repossession, *289 the purchaser from the conditional vendor secures good title."
See also cases collected in 47 A.L.R. 105, s. 88 A.L.R. 119.
On this appeal the finance company contends that, by the clear terms of the Certificate of Title Act, particularly Sec. 319.22 and Sec. 319.27(2), and the decision of this court in Dicks v. Colonial Finance Corp., Fla. 1956, 85 So.2d 874, "there is no longer any open market for second-hand motor vehicles in Florida" and that a purchaser from a dealer in a regularily established place of business can no longer rely upon the principles of law announced in Glass v. Continental Guaranty Corp., supra, 88 So. 876, and followed in Commercial Credit Co., Inc., v. Parker, 101 Fla. 928, 132 So. 640, as against a conditional vendor, or his assignee, under a duly recorded conditional sale contract.
Sec. 319.22 provides as follows:
"(1) * * * no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said motor vehicle until he, she, or it shall have had issued to him, her or it a certificate of title to said motor vehicle; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for said motor vehicle for a valuable consideration. Except as otherwise provided herein, no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by and on a certificate of title duly issued, in accordance with the provisions of this law."
Sec. 319.27(2), in effect, requires mortgages, trust receipts, conditional sale contracts, and other similar instruments covering a motor vehicle, to be recorded in order to be valid against subsequent purchasers, creditors, mortgagees and other lienholders or claimants. It provides for priority of liens and encumbrances according to the time at which they are noted upon the title certificate, and that "the lien shown on the application for original certificate of title shall take priority over all liens or encumbrances filed subsequent to the date shown on such application."
First, as to the effect of the recordation statute, Sec. 319.27(2), supra, as constructive notice to a subsequent purchaser from a dealer of the lien of the dealer's assignee: While there is a conflict among the courts of other jurisdictions, it was said in Fogle v. General Credit, 1941, 74 App.D.C. 208, 122 F.2d 45, 49, 136 A.L.R. 814, that "[t]he weight of authority in other jurisdictions sustains the view that in circumstances substantially identical with or similar to those presented here the constructive notice generally afforded by compliance with the recording act is nullified." Speaking of the recording statute, the court said:
"But the statute is a bulwark, not a trap. The mortgagee is favored so long as he acts consistently with the statutory conditions. But when he goes further and either by his conduct prevents the purchaser from making the usual investigation or takes advantage of circumstances which he knows or reasonably should know would have this effect, he destroys the foundation upon which his own protection rests. He cannot throw the purchaser off guard concerning the protection which the statute gives to him and take advantage at the same time of what otherwise would or might have been discovered. Thus, if the mortgagee clothes the mortgagor with the indicia of ownership, or gives him authority to sell the property, or stands by in silence and watches the mortgagor deal with it as owner, he nullifies the effect of recording by his inconsistent representation."
*290 See also O'Loughlin v. Erwin M. Jennings Co., Inc., 1928, 107 Conn. 365, 140 A. 758; Kearby v. Western States Securities Co., 1926, 31 Ariz. 104, 250 P. 766; 47 Am. Jur., Sales, Sec. 912, p. 120; cases collected in the annotation in 136 A.L.R. at page 830 et seq.
The facts of the instant case bring it well within the rule announced in Fogle v. General Credit, supra, and which we here adopt. During the nine-year business relationship between the dealer and the finance company, it was their custom to have the repossessed trailers returned to the dealer's lot and there held by him for resale. Mr. Langran testified that, in most instances, the customer would either abandon the merchandise or take it back to the lot and leave it, and that the dealer was authorized to sell the repossessed trailers. In response to the question "And wasn't it further a custom, Mr. Langran, that the dealer would sell the trailer, in cases where it was sold for cash, and then subsequent to the sale and delivery of the trailer, come into Motor Credit and have an accounting with you on whatever was owed at that particular time on that trailer, and other deals?", Mr. Langran replied, "That is true. I would say that is true."
We hold, therefore, that in the circumstances shown by the record here, Mrs. Woolverton is not charged with constructive notice under Sec. 319.27(2) of the finance company's lien.
As to the effect of Sec. 319.22(1) on Mrs. Woolverton's rights under the principle of law relied upon by the Chancellor, quoted above, it is settled law in this jurisdiction, as in many others having a similar provision in their Certificate of Title Act, that the failure of the purchaser to obtain the title certificate at the time of sale does not prevent the passage of title from the seller to the buyer. See Palmer v. R.S. Evans, Fla. 1955, 81 So.2d 635; Ragg v. Hurd, Fla. 1952, 60 So.2d 673; House v. Hodges, Ark. 1957, 299 S.W.2d 201; Rush v. Smitherman, Tex.Civ.App. 1956, 294 S.W.2d 873; H.G. Williams Motor Co. v. Zeagler, La. App. 1957, 92 So.2d 291; Johnson v. Fidelity & Cas. Co. of N.Y., 8 Cir., 238 F.2d 322; Federated Mutual Implement & Hardware Ins. Co. v. Rouse, D.C.Iowa, 133 F. Supp. 226; Hofslund v. Metropolitan Cas. Ins. Co., 7 Cir., 188 F.2d 188.
The Florida statute, like Louisiana's provides that the purchaser shall not acquire a "marketable" title until a certificate of title is issued to him. The Louisiana Court said in Hamner v. Domingue, La. App. 1955, 82 So.2d 105, 107, that the statute "does not provide that no valid title shall be perfected until the purchaser obtains a title certificate, but that no marketable title shall be perfected until that time. The term `marketable title' does not connote that the vendor cannot sell, but that he cannot enforce an agreement to buy, in absence of same, Words & Phrases (Perm. Edition), Vol. 26A, pp. 35-55, Verbo `Marketable Title'."
By the assignment to it of the conditional sale contract, the finance company "took the shoes of the dealer, and by repossession the dealer took the shoes of an agent in possession with title resting in [the finance company]." Baer v. General Motor Acceptance Corp., 1931, 101 Fla. 913, 132 So. 817, 822. When the dealer has actual or implied authority to sell, a purchaser from the dealer takes title as if buying directly from the finance company, under the general principles of agency. See O'Loughlin v. Erwin M. Jennings Co., Inc., supra, 140 A. 758; Commercial Credit Co. v. Blair, 1925, 84 Mont. 314, 275 P. 748; Moss v. Bowman, 1931, 116 Cal. App. 720, 3 P.2d 377. Thus, the fact that no certificate of title was obtained by Mrs. Woolverton does not, of itself, invalidate the sale to her by the finance company's agent. Moreover, it might be noted that the finance company, although authorizing the dealer to resell the repossessed trailers and deliver the same to a purchaser before accounting to the finance company for the sale, did not turn over to the dealer the certificate of *291 title covering a cash sale of a repossessed trailer until after the accounting by the dealer. In these circumstances to allow the finance company to take advantage of the purchaser's not having a title certificate would be about as inconsistent as to allow the culprit who murdered his father and mother to beg for mercy on the ground that he was an orphan.
We have also considered the following provision of Sec. 319.22(1), supra: "* * nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for said motor vehicle for a valuable consideration." Whether this provision should be given effect to defeat the right of a purchaser from one who has only apparent authority to sell, arising from facts and circumstances which create an estoppel against the true owner, as distinguished from actual authority, express or implied, see 47 Am.Jur., Sales, Sec. 862, p. 55, need not be decided, since as has been noted above the dealer in the instant case had actual authority to resell the repossessed trailers, so that no question of estoppel based upon apparent authority is involved. See O'Loughlin v. Erwin M. Jennings Co., Inc., supra, 140 A. 758.
The provision of Sec. 319.22(1) providing that "* * * no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by and on a certificate of title duly issued, in accordance with the provisions of this law" is not involved here, as Mrs. Wolverton did, in fact, have record title to the trailer at the time she filed her suit  the finance company having transferred it to her at the time of the execution of the Sutton-Woolverton conditional sale contract.
We conclude, therefore, that the provisions of § 319.22 and § 319.27(2), supra, do not change the rule of Glass v. Continental Guaranty Corp., supra, 88 So. 876, at least where the dealer has express or implied authority to sell, and that the Chancellor did not err in so holding.
Dicks v. Colonial Finance Corp., supra, 85 So.2d 874, here relied upon by the appellant, does not support its contention, since the facts are in no way analogous and the particular portion of the Certificate of Title Act there involved was not the same. In the Dicks case, Colonial Finance Corp., the assignee of the conditional sale contract first executed covering the car, was held entitled to the car under the following provision of § 319.27(2): "Provided, however, that the lien shown on the application for original certificate of title shall take priority over all liens or encumbrances filed subsequent to the date shown on such application." No question was presented as to whether Colonial Finance gave anyone authority to resell the car after it acquired its lien, while in the instant case there was clear authority to resell.
The only other question argued here by appellant finance company is whether the evidence supported the Chancellor's finding that the Sutton-Woolverton conditional sale contract "was obtained under circumstances of misinformation and overreaching, if not actual duress, such as to relieve her of any liability" and that "the equities of the cause are with the plaintiff." The evidence was ample to support this finding, and we think it fully justified the Chancellor in cancelling the contract. See Williston on Contracts, § 1589, p. 4434.
For the reasons stated, the decree appealed from should be and it is hereby
Affirmed.
TERRELL, C.J., and HOBSON and DREW, JJ., concur.
THOMAS, THORNAL and O'CONNELL, JJ., dissent.