125 So.2d 134 (1960)
Irene E. CASTNER, Appellant,
v.
H.U. ZIEMER, Appellee.
No. 1777.
District Court of Appeal of Florida. Second District.
December 7, 1960.
*135 W. Sperry Lee of Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, for appellant.
Wofford H. Stidham of Holland, Bevis, McRae & Smith, Bartow, for appellee.
REVELS, P.B., Associate Judge.
This appeal is from a judgment entered in favor of H.U. Ziemer, the defendant below. Irene Castner, the plaintiff below, an employee of the Board of Public Instruction, Duval County, Florida, purchased a 1956 Plymouth convertible for her son, Thomas J. Kennedy, and financed it through the Duval County Teachers Credit Union. The Motor Vehicle Commissioner of Florida issued certificate of title on said car to Thomas J. Kennedy, with lien of the Duval County Teachers Credit Union noted thereon. In August of 1957 Kennedy concluded he could not maintain the payments on the car, and advertised it for sale; and in response to said advertisement, James C. Sullivan approached Kennedy and offered to find a buyer for the car, whereupon Kennedy entrusted the possession of the car to Sullivan who made a deposit of $100 and paid one month's installment upon the lien. The possession of the car was given to Sullivan to sell subject to the existing lien. Sullivan gave Kennedy a receipt reading as follows:
"Received from Thos. J. Kennedy 56 Ply. conv. Jim Sullivan is responsible for '56 Ply. conv. /s/ James C. Sullivan."
Sullivan took the car to Waycross, Georgia, and sold it to Memorial Motors. Memorial Motors sold the car through the Thomasville auction to Joe Saunders, who sold the car through the St. Petersburg auction, St. Petersburg, Florida, to Towne Motor Sales, Inc., of Tampa, who in turn *136 sold the automobile on April 15, 1958, to H.U. Ziemer, the appellee.
In October 1957 Sullivan delivered to Kennedy a second installment payment to apply on the Credit Union's lien and advised that the car had been sold but gave no further information. The plaintiff was compelled to pay off the Credit Union on January 31, 1958, and received a satisfaction of lien and transfer of the certificate of title to the automobile; and the Motor Vehicle Commissioner of Florida issued to her a new certificate of title on March 14, 1958.
H.U. Ziemer purchased the automobile on the dealer's certificate, which method is provided by statute in case no Florida certificate of title exists on said motor vehicle, and made no inquiry to the Motor Vehicle Commissioner in Tallahassee as to the status of the title. When he applied for title the Motor Vehicle Commissioner advised plaintiff that the defendant had applied for certificate of title to the car which was recorded in her name. This was the first information the plaintiff had received as to the whereabouts of the automobile after it had been entrusted to Sullivan, and plaintiff brought this action to recover the car.
The Legislature of the State of Florida, by the enactment of Chapter 319, determined that it was necessary to regulate and control the traffic in used motor vehicles and to stabilize the ownership, sale and transfer of motor vehicles so that confusion, fraud and chaos would be eliminated and the rights of bona fide owners of motor vehicles would be protected.
The sections controlling this case are as follows:
"Section 319.21. No person hereafter shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser, nor purchase, or otherwise acquire, or bring into this state a motor vehicle, except for temporary use, unless such person shall obtain a certificate of title for same in his, her or its name in accordance with the provisions of this law; provided that any dealer holding current dealer license plates issued by this state may, in lieu of having a certificate of title issued in the name of such dealer, reassign any existing certificate of title issued in this state or, if no certificate of title exists on such motor vehicles in this state, such dealer shall, over his signature, briefly note such fact of nonexistence and show the name and address of the party from whom the vehicle was obtained, on the face of the separate application for initial certificate of title which is made by the purchaser or transferee * * *."
"Section 319.22(1). Except as provided in §§ 319.21 and 319.28, no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said motor vehicle until he, she, or it shall have had issued to him, her or it a certificate of title to said motor vehicle; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for said motor vehicle for a valuable consideration. Except as otherwise provided herein, no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by and on a certificate of title duly issued, in accordance with the provisions of this law."
"Section 319.24(3). The certificate of title shall be retained by the first lien holder until the entire amount of such first lien is fully paid."
*137 The statute provides that if no certificate of title exists on a motor vehicle in the State of Florida, the dealer shall note briefly the fact of nonexistence and the name and address of the party from whom the vehicle was obtained on a separate application for initial certificate of title. This language precludes the use of this method of obtaining a certificate of title if one has been already issued by the Motor Vehicle Commissioner. It also places the responsibility upon a dealer or purchaser to make inquiry of the Motor Vehicle Commissioner as to whether or not a certificate of title has been issued on said car before utilizing this method. This procedure cannot be used indiscriminately with impunity in the used car business.
The original certificate of title was held by the Duval County Teachers Credit Union with the lien noted thereon, and upon the records of the Motor Vehicle Commissioner at Tallahassee. The records in the office of the Motor Vehicle Commissioner constitute notice to prospective purchasers of the motor vehicle. One cannot be a bona fide purchaser if he fails to make timely inquiry as to the condition of the title of the motor vehicle as recorded with the Motor Vehicle Commissioner, and one assumes the burden of existing defects and liens on title to the motor vehicle. The Legislature of the State of Florida has placed the burden of making inquiry squarely upon the purchaser of a secondhand motor vehicle, and if he relies upon the representation of the vendor and it turns out that his confidence has been misplaced, he cannot escape the result of his own carelessness. Clinger v. Reliable Discount Co., Fla., 80 So.2d 606, 607:
"* * * The fact remains that they have failed to comply with Section 319.27, supra, and this failure has deprived them of the right, under Florida law, to plead that they are a subsequent (or `innocent', as the statute expresses it) purchaser for value, without notice, of the car. They cannot now `escape the penalty for (their) own carelessness'. McQueen v. M. & J. Finance Corp., Fla., 59 So.2d 49, 51."
May v. Citizens National Bank of Orlando, Fla.App., 100 So.2d 651, 653:
"* * * It follows that at least without inquiry to said office, there being no other circumstances which might justify the absence of such inquiry, a person cannot achieve the status of a bona fide purchaser entitled to be freed of prior rights in a used motor vehicle in this state."
See also the decisions of the Supreme Court of Florida in Livingston v. National Shawmut Bank of Boston, Fla. 1952, 62 So.2d 13; Vincent v. General Motors Acceptance Corp., Fla. 1954, 75 So.2d 778.
The record discloses that James C. Sullivan did not secure a certificate of title to the 1956 Plymouth convertible in compliance with the provisions of Chapter 319 and did not obtain a marketable title. The appellee's claim to said car is based upon the transaction originating with the said Sullivan. The appellee did not exercise due caution for his own protection by making inquiry to the Motor Vehicle Commissioner, Tallahassee, Florida, as to the condition of the title prior to buying said car; he became a victim of his own oversight. He obtained no greater right to the car than that held by Sullivan. The appellee cannot claim the status of a bona fide purchaser of said car, because the record does not disclose any reason to excuse him for failing to make timely inquiry. Dicks v. Colonial Finance Corp., Fla., 85 So.2d 874, 876:
"* * * In the absence of some intervening principle of estoppel, no one can convey better title than he has, and conversely, in the absence of some such intervening right, one cannot claim a better title than he, in fact, receives".
Appellee has placed considerable reliance upon the case of Motor Credit Corp. v. *138 Woolverton, Fla., 99 So.2d 286, 72 A.L.R. 2d 334, wherein the Court held that, by reason of the course of business over a long period of time between the finance company and the dealer, the finance company was estopped to assert a superior right over the rights of a subsequent purchaser from the dealer, who had not paid off the finance company's retain title contract after the car had been repossessed and before resale to Woolverton. The facts and law of the Woolverton case are not applicable to the instant case.
The judgment appealed from is reversed and remanded with directions to enter judgment for appellant, and award costs to her herein, and also costs for the first appeal decided by this Court January Term, 1959, between the same parties.
Reversed and remanded with directions.
KANNER, Acting Chief Judge, and SHANNON, J., concur.