137 So.2d 627 (1962)
JOEL STRICKLAND ENTERPRISES, INC., a Corporation, Appellant,
v.
ATLANTIC DISCOUNT COMPANY, Inc., a Corporation, et al., Appellees.
No. C-338.
District Court of Appeal of Florida, First District.
February 13, 1962.
Rehearing Denied March 1, 1962.
*628 Roth, Segal & Roth, Orlando, for appellant.
Boggs, Blalock & Holbrook, Jacksonville, for appellees.
RAWLS, Judge.
Atlantic Discount Company, Inc. brought this action for a declaratory decree to determine the ownership of two automobiles. From a decree in favor of Atlantic, Joel Strickland Enterprises, Inc., defendant below, appealed.
David Saye, a used car dealer d/b/a Dave's Southern Servicecenter, in Fort Lauderdale, Florida, had possession and title to a 1958 Cadillac, and sold the same to Horace and Helen Neely on November 12, 1959, under a conditional sales contract agreement. On January 15, 1960, David Saye sold a 1957 Buick Roadmaster to his father and mother, the L.D. Sayes, also under a conditional sales contract. Immediately after each sale the respective conditional sales contracts were assigned to Atlantic Discount Company.
At the time of each sale the used car dealer had possession of the automobile sold and had the title certificate for each which had been assigned to him in blank. The purchasers of both of the automobiles and Atlantic relied upon the used car dealer to apply for new title certificates, and to cause to be noted thereon Atlantic's lien. Some time subsequent to each sale, Atlantic received a notice from the used car dealer to the effect that he had made application for new title certificates, though he had in fact not done so.
During this time the used car dealer, Saye, had an agreement with Joel Strickland *629 Enterprises, Inc., whereby Saye was as agent authorized to purchase automobiles in the name of his principal and to pay for same by signing a draft in favor of the seller on the Orlando Auto Auction  one of three wholesale automobile auctions owned by Strickland. If the title certificate and draft attached thereto were acceptable to Strickland, Saye was then required to bring the automobile to one of the auctions to be sold. The purpose of this agreement was to stimulate business at the auctions.
In February 1960, Saye, purporting to buy the two automobiles in question for Strickland, drew drafts on the Orlando auction. The February 16 draft on the Buick was made payable to Florence L. Henry (Saye's sister) although the title certificate attached was in the name of Witt Brothers, the record title holder. The February 23 draft on the Cadillac was payable to J.R. Rees although the title certificate attached was in the name of Cobb and Warner, the record title holder. These drafts were honored by Strickland who applied to the Motor Vehicle Commissioner for certificates of title.
Thereafter, Atlantic obtained possession of the Cadillac on April 28, 1960, and the Buick in mid-March. Upon non-payment of the installments due under its conditional sales contract, Atlantic applied to the Motor Vehicle Commissioner for repossessed titles, and discovered for the first time Strickland's interest in the automobiles.
When the automobiles were not delivered to the auction, Strickland also began investigating. To prevent further depreciation both parties agreed to sell the automobiles, to place the proceeds in escrow and to determine ownership by a suit for declaratory decree. In this action brought by Atlantic the lower court found that the knowledge of the agent Saye was imputed to his principal, Strickland, and Atlantic was entitled to summary final decree as a matter of law.
The first question presented here is whether the knowledge of the agent Saye is imputed to the principal Strickland.
The general rule is well settled that a principal is chargeable with notice or knowledge received by his agent while acting within the scope of his authority.[1]
There is, however, a well established exception to this general rule, where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, as where an agent is in reality acting in his own business or for his own personal interest and adversely to the principal.[2] Knowledge acquired by officers or agents of a corporation while not acting for the corporation but while acting for themselves, is not imputable to the corporation.[3]
Notwithstanding this exception to the general rule, in some well defined cases the principal may be charged with the knowledge of an agent although acting adversely to the principal,[4] but the facts in this case do not fall within one of those classes.
The agent Saye in this case had an established used car business and was clearly acting for himself in his own business and not on behalf of his principal Strickland when he first sold the automobiles to the purchasers and assigned the conditional sale contracts to Atlantic. When thereafter Saye delivered the assigned title certificates *630 to Strickland and received payment for the automobiles with knowledge of the outstanding conditional sale contracts held by Atlantic, he was acting fraudulently in his own interest and adversely to the interest of his principal. The record shows that the agent Saye did not reveal the true facts to his principal Strickland.
Atlantic next contends that it had a right to rely upon the used car dealer to perform his statutory[5] duty of obtaining the certificates of title in the names of the purchasers showing the lien of Atlantic, and the delay in obtaining the new title certificates was not sufficient to place Atlantic upon notice that the dealer had not performed this duty since it usually takes the Motor Vehicle Commissioner from four to twelve weeks to issue new certificates.
Strickland maintains that Atlantic's negligence in failing to obtain a title certificate, in failing to file notice of lien and in leaving the title certificates, endorsed in blank, in the hands of the dealer put the dealer in a position where he could perpetrate fraud.
Pertinent statutes relating to the purchase and sale of used automobiles are:
§ 319.21(2) "No person hereafter shall * * * purchase * * * a motor vehicle * * * unless such person shall obtain a certificate of title * * * provided that any dealer * * may, in lieu of having a certificate of title issued in the name of such dealer, reassign any existing certificate of title issued in this state * * *."
§ 319.23(5) "* * * Licensed dealers need not apply for certificates of title for such motor vehicles in stock * * * but upon transfer of same shall * * * give transferee a reassignment of the certificate of title * * *."
§ 319.22(1) "Except as provided in §§ 319.21 [relating to new cars or purchase of used cars by dealers] and 319.28 [relating to transfer of ownership by operation of law], no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said motor vehicle until he, she, or it shall have had issued to him, her or it a certificate of title to said motor vehicle; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for said motor vehicle for a valuable consideration. Except as otherwise provided herein, no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by and on a certificate of title duly issued, in accordance with the provisions of this law."
§ 319.27(2) "Any * * * conditional sales contract, or other * * * instrument made after August 1, 1949, and covering a motor vehicle required to be registered, if a notation of the lien or encumbrance has been made by the commissioner on the face of the certificate of title for such vehicle, shall be valid as against * * * subsequent purchasers * * * but otherwise shall not be valid against them." (Emphasis supplied.)
From these statutes we conclude that it is the duty of a dealer who has not *631 obtained a title certificate in its own name, to reassign the existing title certificate to his purchaser. Atlantic knew or could have known that the dealer did not perform this duty and, therefore, had no right to rely upon the dealer to see that its lien was properly recorded in the office of the Motor Vehicle Commissioner and noted on the certificate of title.
When a title certificate endorsed in blank is left in the hands of the dealer, it may well be that the marketable title is also in the hands of the dealer for although the purchaser acquires ownership, he does not acquire marketable title under § 319.22(1) until there is issued a certificate of title in the name of the purchaser. It is not necessary to decide this question here, for the purchasers and Atlantic did leave indicia of title in the hands of an unscrupulous dealer, and we find that Atlantic, the purchaser of an unrecorded lien, cannot assert its claim as superior to a subsequent purchaser for valuable consideration claiming under a recorded certificate of title. This is obviously the intent of §§ 319.22(1) and 319.27(2), Florida Statutes, F.S.A.
Furthermore, where one of two innocent parties must suffer because of the wrongdoing of a third person, the loss must fall on the party who by his conduct created the circumstances which enabled the third party to perpetrate the wrong.[6]
Atlantic argues that the used car dealer Saye had title to the two automobiles at the time he sold same to the Neelys and the Sayes who, being innocent purchasers for value, acquired valid title and Atlantic acquired a valid lien. Thereafter, the dealer had no title to sell and Strickland acquired no interest by his purchase. This contention ignores the fact that the Neelys and Sayes are not parties to this cause and have relinquished all further claims of ownership.
It is well settled that failure to obtain a title certificate does not prevent title from passing to a purchaser for value in a contest for ownership between the purchaser and the dealer.[7] But such were not the facts here.
It is equally well settled that in the absence of some intervening principle of estoppel, no one can convey a better title than he has. With respect to sale of motor vehicles, the principle was applied in Castner v. Ziemer[8] where a motor vehicle was entrusted by its record title holder to one Sullivan who sold same although he had no indicia of ownership, no title certificate or assignment of title to transfer. Purchasers claiming through Sullivan acquired nothing since Sullivan owned nothing. Such were not the facts in the instant case and the rule has no application here, where the dealer Saye had been permitted to keep in his possession a valid blank assignment of title from the record title holders and he assigned same to Strickland to whom was thereafter issued a new certificate of title. By virtue of F.S. §§ 319.22 and 319.27(2), F.S.A., Atlantic is estopped to claim a lien superior to that of the record title holder.
To hold otherwise would be tantamount to ignoring or rewriting the statutes.
Atlantic's final argument is that Strickland should have been put on notice by the fact that the drafts it honored were payable to persons other than the record title holder. We find no merit in this contention.
Reversed.
CARROLL, DONALD, Chief Judge, and WIGGINTON, J., concur.
NOTES
[1] 2 Am.Jur., Agency § 368; 1 Fla.Jur., Agency § 84 and cases cited therein.
[2] 1 Fla.Jur., Agency § 87.
[3] Aycock Bros. Lumber Co. v. First National Bank of Dothan, 54 Fla. 604, 45 So. 501 (1907); Roess Lumber Co. v. State Exchange Bank, 68 Fla. 324, 67 So. 188, L.R.A. 1918E, 297 (1914); Mullan v. Bank of Pasco County, 101 Fla. 1097, 133 So. 323 (1931); and Bean v. Suburban Holding Co., 121 Fla. 868, 164 So. 513 (1935).
[4] See 104 A.L.R. 1250 and 1251.
[5] § 319.23(5) "In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser, and in all other cases such certificate shall be obtained by the purchaser. * * * [T]he application * * * shall be filed within ten days from the delivery of such motor vehicle."
[6] Glass v. Continental Guaranty Corporation, 81 Fla. 687, 88 So. 876, 879, 25 A.L.R. 312 (1921).
[7] In Motor Credit Corporation v. Woolverton, 99 So.2d 286, 72 A.L.R.2d 334, (Fla. 1957) relied upon by Atlantic-appellee, the controversy was between the purchaser and the principal of the agent dealer.
[8] Castner v. Ziemer, 125 So.2d 134 (Fla. App. 1960).