298 So.2d 345 (1974)
GREYHOUND RENT-A-CAR, INC., a Florida Corporation, Petitioner,
v.
Harry J. AUSTIN, Respondent.
No. 43511.
Supreme Court of Florida.
July 17, 1974.
Robert E. Dubow of Walden & Dubow, Dania, for petitioner.
Barry J. Stone of Weck & Stone, Pompano Beach, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the per curiam affirmance without opinion by the District Court of Appeal, Fourth District, reported at 273 So.2d 152. Conflict has been alleged between the decision sought to be reviewed and May v. Citizens National Bank of Orlando,[1] Castner v. Ziemer,[2] Trumbull Chevrolet Sales Co. v. Seawright,[3] and Ed Lane Auto Sales Co., Inc. v. Weinstein.[4] Since the petition reflected apparent jurisdiction in this Court, we issued the writ. Upon further consideration of the matter, we have determined that the cited decisions present no direct conflict as required by Article V, Section 3(b)(3), Florida Constitution. The writ must be, and hereby is, discharged for reasons which will be set out below.
Petitioner and Family Cars, Inc. initially entered into an arrangement for the sale of Greyhound's rental automobiles. Under this agreement, Greyhound would call Family Cars instructing them that certain cars could be picked up and placed on Family Cars' lot for sale, with Greyhound retaining the title and title certificate. When a car was sold, Family Cars would deposit the proceeds in its own account, draw a draft for the amount specified by Greyhound from their depreciation schedule, retaining the difference as profit. Upon receipt of payment, Greyhound would transfer the title certificate and warranty *346 over to the purchaser. After several months, Greyhound changed this procedure, requiring Family Cars to pay for each car with a cashier's check at the time of sale. It appears from the record that Greyhound was not authorizing the removal of these vehicles by the purchaser from Family Cars until Greyhound first received the cashier's check. Additional controls were instituted by Greyhound to protect its interest. A representative of Greyhound would periodically call upon Family Cars and inventory the cars to further insure that all of the vehicles entrusted to Family Cars had not been sold or, if sold, that Greyhound had received the proceeds from the sale. Even the right of possession was not absolute in Family Cars. Greyhound would often withdraw cars from Family Cars' lot around the holiday seasons to bolster their rental fleet.
In the present case, a 1970 Chevrolet was placed with Family Cars and the respondent's son was interested in purchasing it. He and a mechanic friend went to the lot, examined the car and inquired about the title. They were told that these were cars used by Greyhound employees but that the dealer would furnish a clear title. An initial deposit was placed and the balance was paid four days later, after minor repairs were made.
Thereafter, Family Cars failed to pay to the petitioner the agreed upon balance on the used vehicle. Greyhound filed a replevin action against the respondent, and the Sheriff replevied the automobile. Prior to the actual return of the automobile, Austin was contacted by petitioner's counsel and told that the car was to be replevied. He became concerned over the absence of a title certificate and inquired at the tag agency. He was repeatedly told that the delay was probably caused by the holiday season. After a trial, final judgment was entered in favor of the respondent-purchaser and the District Court affirmed. We granted certiorari.
We find, however, that the instant case is distinguishable from those cited for conflict inasmuch as none contain the peculiar selling arrangement which exists in the present case and which existed in Motor Credit Corporation v. Woolverton,[5] upon which the trial court relied. Petitioner's cited cases reassert the provisions of Sections 319.21 and 319.22, Florida Statutes, to the effect that a purchaser must obtain from an automobile dealer a certificate of title and also that notice of irregularities in the seller's title is imputed to the purchaser; the Woolverton holding is an equitable exception to these general rules of law. In noting the overriding logic of Woolverton, this Court must keep in mind that the Petitioner herein was a participant in the establishment of, and in the benefits derived from, the procedure which was set up for the purpose of disposing of Petitioner's cars to the public  a procedure that had the effect of disposing of between three hundred and a thousand of Petitioner's cars in a period of little more than one year, and in which the Petitioner's agents were active participants at all times. It was a procedure by which the Petitioner itself created the hazard of which it now complains, a hazard which could have been avoided by the very slightest notice or warning to the public.
The controlling case in this instance, unquestionably, is Woolverton. In that case, the vehicle was sold by a dealer under a conditional sales contract financed by Motor Credit Corporation. The dealer assigned the conditional sales contract to the finance company, pursuant to an agreement which would have obligated the dealer to repurchase the vehicle if it were repossessed by the finance company. The finance company recorded its lien, and thereafter the dealer reacquired possession of the vehicle from the original purchaser. The dealer then sold it to Mrs. Woolverton without advising her of the finance company's lien, and without accounting to the finance company. When the finance company *347 learned of the sale to Mrs. Woolverton, they demanded payment. The dealer then made several payments on behalf of Mrs. Woolverton, without revealing to Motor Credit Corporation that the dealer had, in fact, been paid in full. The dealer then filed for bankruptcy. When Mrs. Woolverton was advised that she had to pay the balance due, or be dispossessed from the trailer, she signed a conditional sales agreement with the finance company, pursuant to which the dealer sold the trailer to her and the president of the dealership as co-purchasers, whereupon the president of the dealership then assigned the contract back to the finance company. Mrs. Woolverton then filed suit for declaratory decree, for an injunction, and for cancellation of the agreement and the lien. On appeal, this Court held:
"Where one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetuate [perpetrate] the wrong or cause the loss."[6]
We then adopted the following principle:
"Where a dealer has parted with possession of property conditionally sold but has regained possession of it, as upon retaking after default of the purchaser, without authorization of the assignee and without his knowledge or consent, a subsequent purchaser from the dealer does not obtain title as against the assignee. However, if the assignee of the conditional sales contract expressly or impliedly consents to the resale after repossession, the purchaser from the conditional vendor secured good title."[7]
In Woolverton, we were faced with the strong statutory language that the Petitioner relies upon in this case. However, this Court, faced with a factual situation which was not nearly as flagrant as in the instant case, and where there was even less reason than in the instant case to raise an estoppel on the part of the titleholder, noted:
"The weight of authority in other jurisdictions sustains the view that in circumstances substantially identical with or similar to those presented here the constructive notice generally afforded by compliance with the recording act is nullified.
"But the statute is a bulwark, not a trap. The mortgagee is favored so long as he acts consistently with the statutory conditions. But when he goes further and either by his conduct prevents the purchaser from making the usual investigation or takes advantage of circumstances which he knows or reasonably should know would have this effect, he destroys the foundation upon which his own protection rests. He cannot throw the purchaser off guard concerning the protection which the statute gives to him and take advantage at the same time of what otherwise would or might have been discovered. Thus, if the mortgagee clothes the mortgagor with indicia of ownership, or gives him authority to sell the property, or stands by in silence and watches the mortgagor deal with it as owner, he nullifies the effect of recording by his inconsistent representation."[8]
Thus, in Woolverton, we noted that the business relationship between the dealer and Motor Credit Corporation had made it a custom for the repossessed trailers returned to be held on the dealer's lot and then resold by him, and that by its conduct, the Motor Credit Corporation had given the dealer the actual or the implied authority to resell the repossessed trailer, and that, as a result, the purchaser was not charged with constructive notice of the finance company's lien under Section 319.27(2), Florida Statutes.
*348 In Woolverton, we then made a most important distinction when we noted that merely because the statute, Section 319.22(1), Florida Statutes, prevented a "marketable" title from being passed, it did not mean that there were no circumstances under which title could actually pass. As we know, under the law of real property, if a seller enters into a contract with a buyer to sell a piece of property which is not marketable, and the contract calls for marketability, the buyer may reject the title as being unacceptable. Likewise, if a contract were entered into with a buyer for the sale of a motor vehicle, and the buyer examined the recording information and determined that the seller did not have a marketable title, the buyer could reject the contract without breaching it. However, as we said in Woolverton:
"[T]he failure of the purchaser to obtain the title certificate at the time of sale does not prevent the passage of title from the seller to the buyer.
* * * * * *
"The Florida statute ... provides that the purchaser shall not acquire a `marketable' title until a certificate of title is issued to him... . [T]he statute `does not provide that no valid title shall be perfected until the purchaser obtains a title certificate, but that no marketable title shall be perfected until that time. The term `marketable title' does not connote that the vendor cannot sell, but that he cannot enforce an agreement to buy, in absence of same.
* * * * * *
"When the dealer has actual or implied authority to sell, a purchaser from the dealer takes title as if buying directly from the finance company, under the general principals of agency... . Thus, the fact that no certificate of title was obtained by Mrs. Woolverton does not, of itself, invalidate the sale...."[9]
We then pointed out that in that case, as in the case at bar, although the dealer had authority to sell the vehicles and to deliver them to the purchaser before accounting for the proceeds, there was not a relinquishment of the certificate of title until cash was, in fact, paid. After noting this, Mr. Justice Roberts eloquently summarized the lack of logic in allowing the statutes to be so used as a shield:
"In these circumstances to allow the finance company to take advantage of the purchaser's not having a title certificate would be about as inconsistent as to allow the culprit who murdered his father and mother to beg for mercy on the ground that he was an orphan."[10]
There can be no question that the Woolverton case is the leading case in Florida involving a factual situation similar to that in the case at bar. Woolverton controls here, and mandates an affirmance of the District Court. There is, in fact, no conflict between this case and those relied upon by the Petitioner.
Accordingly, no direct conflict having been demonstrated, the writ must be, and hereby is, discharged.
It is so ordered.
ADKINS, C.J., and ROBERTS and ERVIN, JJ., concur.
DEKLE, J., concurs with result.
McCAIN, J., dissents with opinion.
McCAIN, Justice (dissenting):
I must respectfully dissent from the majority view in this cause where we are again concerned about the application of Section 319.22 and Section 319.21, Fla. Stat. (1971), on a purchase of a motor vehicle.
*349 The pertinent and essential facts have been fairly stated by the majority, which then raises the provocative question of the correct application of the rationale of law as stated in Motor Credit Corp. v. Woolverton, 99 So.2d 286 (Fla. 1957). In my due consideration of its application, herein lies the error of the majority.
Sub judice, the trial court, after making an initial determination that the "dealer" had actual or implied authority to sell, relied on the principle of law stated in Wooverton, wherein our Court held:
"We have also considered the following provision of Sec. 319.22(1), supra:
`* * * nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for said motor vehicle for a valuable consideration.' Whether this provision should be given effect to defeat the right of a purchaser from one who has only apparent authority to sell, arising from facts and circumstances which create an estoppel against the true owner, as distinguished from actual authority, express or implied, see 47 Am. Jur., Sales, Sec. 862, p. 55, need not be decided, since as has been noted above the dealer in the instant case had actual authority to resell the repossessed trailers, so that no question of estoppel based upon apparent authority is involved."
In reviewing the trial court's decision, I am compelled to be bound by an additional principle of law, applicable to this case:
"... The case was tried by the Circuit Judge upon a waiver of the jury by the parties. His factual findings in favor of the appellee are entitled to the weight of a jury verdict and will not be disturbed unless it is shown that there is a total lack of substantial evidence to support his conclusion...." Chakford v. Strum, 87 So.2d 419, 420 (Fla. 1956).
I have difficulty in reviewing the trial court's determination that the dealer had actual or implied authority to sell the cars, placing this case within the purview of the decisional law of Woolverton. The law is well settled in this State that the authority of the agent may be real or it may be apparent and the public may rely on either unless in the case of apparent authority the circumstances are such as to put one on inquiry. Stuyvesant v. Stahl, 62 So.2d 18 (Fla. 1952).
In carefully reviewing the facts in this case, I find that the used car lot had between thirty and seventy high mileage, one year old cars of one manufacturer. The dealer represented these cars as cars "that Greyhound employees used". In addition, these cars were subject to recall by Greyhound to bolster their rental fleet.
Family Cars did have the authority to sell but it appears from the record that Greyhound refused to allow the delivery of these cars to the purchasers until after Greyhound received payment. These factors coupled with the cold facts that the mechanic accompanying Austin's son did in fact inquire as to the nature of the authority; Austin's son did inquire as to who would provide the title; and the control maintained by the periodic inventories by Greyhound raise a strong presumption that the dealer, Family Cars, Inc. had only apparent authority to sell. Consider also the fact that final payment was not made until four days after the deposit.
This presumption is not rebutted by substantial competent evidence in the record. Therefore the trial court erred in concluding as a matter of fact that the dealer had actual authority. Once this determination is made, it is clear that the decision in Woolverton is inapplicable to this factual situation. Woolverton, by its own language, cited above, clearly limits its applicability to the case of actual authority.
*350 The facts in Woolverton show that the dealer, through a nine year business relationship, had established the right to sell and dispose of repossessed trailers without notifying the finance company prior to disposition. Woolverton therefore has not answered the question presented here; that is: Whether any waiver or estoppel shall operate in favor of a buyer against a person having possession of such certificate for said motor vehicle when purchased for a valuable consideration from a dealer having only apparent authority to sell.
In order to be considered a bona fide purchaser, when the dealer from whom a buyer is purchasing has only apparent authority to sell, that buyer must in my opinion exercise certain protective devices in order to benefit from the waiver or estoppel. It is clear that where it is apparent that the dealer does not have actual authority to sell, the buyer is at least on inquiry notice of the authority the seller possesses, Stuyvesant, supra, and there is a duty to inquire as to the extent of the agency. Miller v. Chase & Co., 88 Fla. 500, 102 So. 553 (1924). This the buyer did.
It is also then further incumbent upon the buyer to make an inquiry to the Department of Motor Vehicles in Tallahassee prior to the purchase. In Castner v. Ziemer, 125 So.2d 134 (Fla.App. 1960), Castner, the plaintiff in the original cause, purchased a car for her son, Kennedy, financing the same through the Duval County Teachers Credit Union. The car was then sold through a sequence of dealers in Georgia and Florida, ultimately being sold by a Tampa dealer to Ziemer. Castner then satisfied the lien, holding clear title. The District Court held:
"The appellee did not exercise due caution for his own protection by making inquiry to the Motor Vehicle Commissioner, Tallahassee, Florida, as to the condition of the title prior to buying said car; he became a victim of his own oversight... . The appellee cannot claim the status of a bona fide purchaser of said car, because the record does not disclose any reason to excuse him for failing to make timely inquiry. Dicks v. Colonial Finance Corp., Fla., 85 So.2d 874, 876."
In the present case, Austin did make an inquiry at the tag agency as to the status of his title to the vehicle after he had received a telephone call from the attorney for Greyhound. However this was too little, too late.
There is an apparent conflict between this decision and Section 672.2-403(2) Florida Statutes (Uniform Commercial Code) wherein it states:
"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."
However this statute on its face does not contemplate the sale of certain goods, such as automobiles, which are protected by recorded titles. In such cases the apparent conflict is resolved by resort to Section 672.2-102 wherein that section reads:
"672.2-102 Scope; certain security and other transactions excluded from this chapter.  Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers." (Emphasis supplied.)
Therefore, since Section 672.2-403(2) appears in conflict with the force and effect of the Motor Vehicle Title Statutes,[1] *351 it has no applicability since it impairs the statute regulating the titling of motor vehicles in this State.
Subsequent to the decision in Woolverton, the market for used automobiles, trailers and other motor vehicles has grown with the tremendous growth in Florida's population. With this growth, vehicle rental companies have grown to meet the ever-increasing tourist influx to this State.
In the middle, dealers in used vehicles have prospered. However wherever there is prosperity, along with the honest dealers, unscrupulous opportunists are still attracted to the lure of easy money.
I am therefore announcing here, that where a dealer has only apparent authority, the purchaser is on inquiry notice of not only the dealer's authority, but is also on inquiry notice of the status of the title.
The seller has, in this case, protected himself more than adequately, and I would not allow him to suffer for his due diligence. The buyer did not take the necessary precautions to protect himself and must therefore suffer the loss.
With the advances in technology, it is not a very time consuming procedure to verify a title and any reasonable used car dealer should not be affronted by the delay incident to this checking procedure instituted by a willing buyer.
As stated in Woolverton, if the dealer has actual authority, this being determined upon inquiry, the necessity for inquiry notice as to the title is unnecessary. It might though be added as a caveat, that in all cases a willing buyer should inquire as to the status of the title, for the distinction between actual authority and apparent authority constitutes a fine line of legal determination.
For the reasons stated, in my opinion, the decision of the District Court should be reversed and remanded.
NOTES
[1] 100 So.2d 651 (Fla.App. 1958).
[2] 125 So.2d 134 (Fla.App. 1960).
[3] 134 So.2d 829 (Fla.App. 1961).
[4] 143 So.2d 210 (Fla.App. 1962).
[5] 99 So.2d 286 (Fla. 1957).
[6] Id. at 288.
[7] Id. at 288-289.
[8] Id. at 289.
[9] Id. at 290.
[10] Id. at 291.
[1] Sections 319.21, 319.22, Fla. Stat. 1971.