377 So.2d 725 (1979)
Bruce MILNES and Darlene Milnes, His Wife; Thomas B. Annette and Elizabeth I. Annette, His Wife; and AVCO Financial Services of the United States, a Florida Corporation, Appellants,
v.
GENERAL ELECTRIC CREDIT CORPORATION, Appellee.
No. 78-1994.
District Court of Appeal of Florida, Third District.
November 20, 1979.
Rehearing Denied January 3, 1980.
*726 Wolfson & Urich and Robert Urich, Miami, for appellant AVCO.
Barnett & Kress and Stephen A. Kress, Miami, for appellee.
Before HENDRY, HUBBART and SCHWARTZ, JJ.
HUBBART, Judge.
This is an action to foreclose a security agreement on a motor home brought in the Circuit Court for the Eleventh Judicial Circuit of Florida. The trial court entered a final judgment of foreclosure as prayed for by the plaintiff lienholder in its complaint. A defendant to this action, who claims an interest in the motor home superior to that of the plaintiff lienholder, has brought this appeal.
The central issue presented for review is whether good title to a motor vehicle is conveyed free of a prior lien thereon [endorsed on the title certificate of the vehicle] when (a) the holder of the lien entrusts possession of the motor vehicle to a merchant who deals in vehicles of this kind, and (b) the merchant, in turn, sells the motor vehicle to a buyer in the ordinary course of business without satisfying the prior lien thereon. We hold that, upon such a sale, good title to the motor vehicle is conveyed to the buyer in the ordinary course of business free of the prior lien on the vehicle. We, accordingly, reverse the final judgment under review.

I
The material facts pertinent to the above issue are undisputed. On March 3, 1975, Mr. and Mrs. Thomas B. Annette purchased a motor home from a motor vehicle dealer under a retail installment contract. Mr. and Mrs. Annette made a down payment on the motor home and agreed by contract to pay the balance of the purchase price with 84 consecutive monthly installment payments. Under the contract, the dealer retained a security interest in the motor home until all the required installment payments were made, and, upon default of any such payment, the dealer was given the right to foreclose on the security agreement and to repossess the vehicle for the purpose of sale. The contract also provided that Mr. and Mrs. Annette could neither sell the motor home nor remove it from their address without first notifying the dealer and obtaining its express written consent. This contract was immediately assigned by the dealer for value to the plaintiff General Electric Credit Corporation [GECC]. The title certificate to the motor home was issued in the name of Mr. and Mrs. Annette with the plaintiff GECC's lien endorsed thereon.
*727 In July 1977, Mr. and Mrs. Annette became financially unable to continue making their monthly installment payments on the motor home. Upon first notifying the plaintiff GECC of their intended action, Mr. and Mrs. Annette removed the motor home to American R.V., Inc. a merchant in the business of selling such vehicles, for the purpose of selling the motor home. The plaintiff GECC took no action to repossess the motor home, to foreclose on their security agreement, or to object in any way to removal of the motor home to the above motor vehicle dealer. Indeed, the record shows that a representative of the plaintiff GECC specifically allowed the motor home to remain on consignment in the possession of American R.V. and obtained a receipt from said dealer stating that no storage charges would be imposed for the motor home and that it would not be sold or released without the plaintiff GECC's concurrence. The record further shows that, much like the present case, the plaintiff GECC had a prior history of dealings with American R.V. in which other collateralized vehicles were sold by said dealer to satisfy the plaintiff's GECC's liens thereon.
On August 10, 1977, the dealer American R.V. sold the motor home in question to two of the defendants in this cause, Mr. and Mrs. Bruce Milnes. The record reveals that Mr. and Mrs. Milnes applied for, but apparently did not receive the title to the motor home at the time of the sale. Mr. and Mrs. Milnes made a down payment on the motor home and signed a retail installment contract with the dealer American R.V. in which they agreed to pay the balance of the purchase price with 72 consecutive monthly installment payments. Under the contract, the dealer American R.V. retained a security interest in the motor home until all the required installment payments were made. Mr. and Mrs. Milnes took possession of the motor home and held possession at the time this action was filed.
The dealer American R.V. immediately assigned this contract for value to one of the defendants in this cause, AVCO Financial Services of the United States [AVCO]. After the defendant AVCO issued their check to the dealer American R.V. in payment for rights under this contract, the dealer American R.V. issued its check to the plaintiff GECC in the amount of $5,761.20, as had been previously quoted to them by the plaintiff GECC, to pay off the lien on the motor home. The plaintiff GECC accepted the check and deposited it. After the check was returned by the bank for insufficient funds, the plaintiff GECC requested the dealer American R.V. to issue a certified check. This check was never remitted and the bounced check was never made good. On September 14, 1977, the dealer American R.V. went out of business.
The plaintiff GECC thereafter brought an action in the trial court to foreclose on their first lien based on the security agreement with Mr. and Mrs. Annette. It was alleged that the Annettes had defaulted on their payments under the agreement and that, accordingly, it was entitled to have the motor home sold to pay off the amount due and owing under the agreement. In addition to Mr. and Mrs. Annette, the plaintiff GECC joined as defendants Mr. and Mrs. Milnes who had actual possession of the motor home and the defendant AVCO who had financed the Milnes' purchase of said vehicle. These defendants filed answers contending, in effect, that Mr. and Mrs. Milnes had bought the motor home for new and valuable consideration from a motor vehicle dealer in the ordinary course of business, that the plaintiff GECC had consented to such a sale and that the plaintiff GECC by acquiescing in such sale lost its first lien on the motor home. The defendant AVCO counterclaimed against the plaintiff GECC and crossclaimed against the defendants Mr. and Mrs. Annette for declaratory decree that it had superior interest and lien in the motor home.
After discovery was taken revealing the above-stated facts, both plaintiff GECC and the defendant AVCO moved for summary judgment. The trial court entered final summary judgment of foreclosure in favor of the plaintiff GECC, denied the defendant AVCO's motion for summary *728 judgment, and rejected, in effect, the defendant AVCO's counter and cross-claims for a declaratory decree in its favor. The defendant AVCO appeals.[1]

II
The law is well-settled under Florida's Uniform Commercial Code that good title to a motor vehicle is conveyed free of a prior lien thereon when (a) the holder of the lien entrusts possession of the motor vehicle to a merchant who deals in vehicles of this kind, and (b) the merchant, in turn, sells the motor vehicle to a buyer in the ordinary course of business without satisfying the prior lien thereon. Hamilton County Bank v. Tuten, 250 So.2d 17 (Fla. 1st DCA 1971); Correria v. Orlando Bank and Trust Co., 235 So.2d 20 (Fla. 4th DCA 1970); §§ 672.403(1)-(2), Fla. Stat. (1977); see also Stroman v. Orlando Bank and Trust Co., 239 So.2d 621 (Fla. 4th DCA 1970). This was substantially the law of Florida prior to the effective date [January 1, 1967] of Florida's Uniform Commercial Code even where the prior lien had been endorsed on the title certificate of the vehicle. Motor Credit Corp. v. Woolverton, 99 So.2d 286 (Fla. 1957).
This result obtains regardless of any condition expressed between the lienor and merchant and regardless of whether the procurement of the entrustment of the vehicle or the merchant's sale thereof was larcenous under the criminal law. § 672.403(3), Fla. Stat. (1977). A buyer in the ordinary course of business is a person, who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods, buys in the ordinary course from a person in the business of selling goods of that kind, but does not include a pawnbroker. § 671.201(9), Fla. Stat. (1977).
We see no conflict between the above rules established by Florida's Uniform Commercial Code and Florida's Title Certificate Act [Ch. 319, Fla. Stat. (1977)]. These rules were substantially the law of Florida prior to the passage of the Uniform Commercial Code notwithstanding the provisions of the Title Certificate Act. Motor Certificate Corp. v. Woolverton, 99 So.2d 286 (Fla. 1957). It is true, however, that the above rules do not obtain unless (1) the lienholder entrusts possession of the motor vehicle to (2) a merchant who deals in vehicles of this kind. If, for example, the owner of a motor vehicle, without the knowledge or consent of the holder of a lien endorsed on the vehicle's title certificate, entrusts possession of the motor vehicle to a private party who is not a merchant in the business of dealing in vehicles of this kind, it is clear beyond dispute that a subsequent sale of the vehicle by the private party without satisfying the prior lien does not convey good title to the vehicle free of such lien under Florida's Title Certificate Act. Castner v. Ziemer, 125 So.2d 134 (Fla. 2d DCA 1960).
The above rules are based on sound and fair principles of commercial practice. A lienor or a holder of a security interest in goods has, in all fairness, no reason to complain when he entrusts possession of such goods to a merchant who deals in goods of this nature and who, in turn, sells them to a buyer in the ordinary course of business. The very purpose such goods are in a merchant's inventory is so that the merchant may turn the goods into cash by sale. A certain risk is, therefore, taken when liened goods are so entrusted to such a merchant. Moreover, a person buying goods from this merchant has a right to expect that the merchant has the authority to sell the goods as owner and that any prior liens or security interests in the goods will be satisfied by the merchant or other parties. Correria v. Orlando Bank and Trust Co., 235 So.2d 20, 22-23 (Fla. 4th DCA 1970).

III
In the instant case, it is clear beyond any hope of successful contradiction that *729 the plaintiff GECC, as a lienholder on the motor home in question, entrusted possession of the motor home to American R.V. who was a merchant in the business of selling such vehicles. The motor home was specifically so consigned by the plaintiff GECC. Furthermore, it seems perfectly obvious that this entrustment of possession was given for the express purpose of selling the vehicle to satisfy the plaintiff GECC's prior lien. The plaintiff GECC and the merchant American R.V. had similar dealings of this nature in the past. Moreover, the plaintiff GECC (a) quoted the balance due on its lien to American R.V., (b) accepted a check from American R.V. to satisfy the prior lien after the sale was completed, and, (c) requested American R.V. to make good on the check when it bounced. These facts, coupled with the express consignment of the vehicle to American R.V., indisputably shows that the plaintiff GECC consented to the sale of the motor home herein. Indeed, if American R.V.'s check to the plaintiff GECC had not bounced, there surely would have been no litigation in this case.
It is equally clear that the merchant American R.V., in turn, sold the motor home to the defendants Mr. and Mrs. Bruce Milnes in the ordinary course of business without satisfying the prior lien thereon. The defendants Mr. and Mrs. Milnes dealt with the merchant American R.V. in good faith with no showing in this record that the sale to them was in violation of the ownership rights or security interest of the plaintiff GECC. Indeed, the record reveals a perfectly routine business transaction with no indication that Mr. and Mrs. Milnes were anything but buyers in the ordinary course of business.
We recognize the plaintiff GECC's contention that Mr. Bruce Milnes, as a policeman, should have investigated further this sale. We are not persuaded, however, that Mr. Milnes' status as a police officer deprives him of being a buyer in the ordinary course of business. There is nothing in this record to indicate that the sale was fraudulent, and, indeed, the parties in the briefs make no serious contention to the contrary. This was a normal business transaction between the parties concerned conducted with the complete knowledge and consent of the plaintiff GECC.
It is, therefore, our view that Mr. and Mrs. Milnes took good title to the motor home in question upon their purchase of said motor home from American R.V. for value free of the plaintiff GECC's prior lien. The trial court committed reversible error in entering a final summary judgment in favor of the plaintiff GECC. That judgment is, accordingly, reversed and the cause is remanded to the trial court with directions to enter a final summary judgment in favor of the defendant AVCO and to render a declaratory decree as prayed for in the defendant AVCO's counterclaim and crossclaim in accord with the views expressed in this opinion.
Reversed and remanded.
NOTES
[1] Other parties to this action have also appealed but have filed no brief in support thereof before this court. Their appeals are, therefore, deemed abandoned. Fla.R.App.P. 9.110(f).